PEOPLE, *ex rel.* ATTORNEY GENERAL, *v.* WELCH'S ESTATE.

1. STATUTES—STATE ADOPTING STATUTE PRESUMED TO ADOPT PREVIOUS CONSTRUCTIONS THEREOF.
   When a State adopts a statute of a sister State, the presumption generally obtains that it was adopted with reference to, and in recognition of, previous constructions thereof in that State.[1]

2. TAXATION—STATUTES IMPOSING SPECIAL TAXES NOT EXTENDED BY IMPLICATION.
   The provisions of statutes imposing special taxes are not,

[1]Statutes, 36 Cyc. pp. 1154, 1156.

generally, to be extended by implication beyond the clear import of the words used, since it is the duty of the taxing power to express the intent to impose such special burden in clear and unambiguous language.[2]

3. ESTATES—WHEN VESTED.

An estate is vested in possession when there exists a right of present enjoyment, and is vested in interest when there is a present fixed right of future enjoyment.[3]

4. TAXATION — INHERITANCE TAX — WHEN PROPERTY SUBJECT TO TAX.

Whether property is taxable under the inheritance tax law depends upon whether it comes into possession and enjoyment of the transferee upon the death of the transferor, so that if the death of the latter makes no difference in the rights of the parties there is no tax.[4]

5. SAME.

The rule that an estate in possession is an estate in present enjoyment is generally recognized in construing inheritance tax laws.[5]

6. TRUSTS—GRANTOR MAY WAIVE RESERVED INTEREST IN TRUST ESTATE.

The grantor in a trust deed could subsequently waive in favor of the beneficiaries named in it all or part of the reserved interest in the trust estate.[6]

7. TAXATION—TRUST ESTATE VESTING IN BENEFICIARIES DURING LIFETIME OF GRANTOR NOT SUBJECT TO INHERITANCE TAX.

Where a trust not made in contemplation of death was created providing that all of the income from the trust estate over and above a certain fixed amount be paid to the beneficiaries during the lifetime of the grantor, all of the estate except so much as was required to produce the reserved income vested *in præsenti* in the beneficiaries, and, not being contingent on the grantor's death, was not subject to the inheritance tax (3 Comp. Laws 1915, § 14524).[7]

Error to Muskegon; Vanderwerp (John), J.    Submitted October 16, 1925.    (Docket No. 91.)    Decided July 22, 1926.

[2]Taxation, 37 Cyc. p. 1556; [3]Estates, 21 C. J. §§ 23, 24; [4]Taxation, 37 Cyc. p. 1559; [5]Id., 37 Cyc. p. 1556 (Anno); [6]Trusts, 39 Cyc. p. 246 (Anno); [7]Taxation, 37 Cyc. p. 1568.

Andrew B. Dougherty, attorney general, on the relation of the people of the State of Michigan, appealed from an order of the probate court determining the inheritance tax on the estate of Margaret F. Welch, deceased.     Judgment affirming the probate order. Plaintiff brings error.     Affirmed.

*Andrew B. Dougherty,* Attorney General, *Clare Retan,* Deputy Attorney General, and *Henry S. Sweeny,* Assistant Attorney General, for appellant.

*Cross, Foote & Sessions (Miller, Mack & Fairchild,* of counsel), for appellee.

STEERE, J.     Plaintiff seeks review of a judgment by the circuit court of Muskegon county affirming the decision of the probate court of that county fixing the State inheritance tax against the estate of Margaret F. Welch, deceased, who was a resident of Whitehall in said county at the time of her death on June 21, 1923.     Her four children, a daughter and three sons, survived her.     They were all of mature years and married.     She left a will, dated December 22, 1921, disposing of all that portion of her property not theretofore disposed of by her, as claimed, which was duly admitted to probate in the Muskegon county probate court.     It was a short instrument, consisting of one page, disposing of her summer home at White lake, some furniture, rugs and other listed personal property, and is at most but incidental to this controversy, it being claimed by plaintiff that she left an estate worth approximately $800,000 subject to taxation under the inheritance tax law of this State.

On October 28, 1914, Mrs. Welch executed a trust deed constituting herself, Charles G. Welch and Edward R. Estberg as trustees, to whom she transferred in trust the bulk of her property both real and personal, in which her four children were made the primary beneficiaries, or *cestuis que trustent.*     By

the terms of said trust deed she gave the trustees full power to sell and convey any or all of the trust property, to invest and reinvest the proceeds thereof, convert personal property into real or real into personal and to manage the estate as said trustees deemed advisable, even to engaging with it in any lawful business they considered for the best interest of the trust estate. They were to assume and pay all obligations incurred and carry out all contracts made by her, when acting individually or through her former agent, with the following provisions as to their liquidation and the net income of the estate:

"5.  *  *  *  Said trustees shall pay and discharge any and all of said obligations in such manner and at such times as they may deem for the best interests of the trust estate, either out of the *corpus* of the estate or out of so much of the net income thereof as shall exceed the sum of $12,000 a year.  *  *  *

"12. Said trustees shall, from time to time and at such times as may be convenient, pay over to said Margaret F. Welch all of the net income derived from said trust estate during the term of her natural life, except as provided in paragraph five (5) hereof.

"13. Upon the death of said Margaret F. Welch if any income of said trust estate shall have accrued but shall not have been paid over to said Margaret F. Welch, the same shall become a part of and shall be treated as belonging to the *corpus* or principal of the trust estate."

An annual report was to be made to her while living, and after her death to the beneficiaries mentioned in the trust deed. She retained the right during her life to inspect any and all records kept by the trustees and after her death said right was to vest in the beneficiaries. All expenses and adequate yearly compensation to the trustees were made payable out of the income of the estate. After her death the *corpus* of the estate was eventually to be divided among her four children or their issue depending upon certain contingencies, including one that they survive her

and reach certain ages. No power of revocation of the terms of the trust deed was retained by her or control over the property so trusteed, except that as one of the trustees she could participate in exercising the powers given them collectively in its management. The trust does not end with her death but various provisions in the trust deed continue it for some years beyond that event, and provision is made for filling the vacancy in case of death, resignation or inability of a trustee to act for any other reason.

She subsequently signed three instruments which are urged as material to the question involved here. About two years after the execution of this trust deed, an agreement, dated December 30, 1916, was entered into between her as party of the first part, the three trustees named in the trust deed as parties of the second part, and her four children named as beneficiaries parties of the third part. This elaborately composed tripartite agreement is admitted by appellant as of little relevancy to the issue involved beyond emphasizing the grantor's intent that the trust estate "was not to be possessed or enjoyed by the children until after the mother's death." It recites that her children apparently took a vested interest under the trust deed of October 28, 1914, while she intended they should take "contingent interests" without power of alienation and such interest should not be subject to the claims of creditors. To that end it was agreed the trust indenture of October 28, 1914, should be modified to show the interests of her children were contingent and not alienable by them during continuance of the trust, nor while in the hands of the trustees subject to claims of creditors of the children or any of them. The closing part of the agreement upon that subject is as follows:

"*Second.* The said beneficiaries, and each of them, hereby assign, transfer and set over unto said trustees,

and their successors in said trust, so much of their respective interests in and to said trust as may be necessary to carry into effect the covenant and agreements hereinbefore contained.

"*Third.* In all other respects the said indenture of trust dated the 28th of October, 1914, and hereto prefixed, is ratified, established and confirmed."

This instrument shows an intent by its signers to put the interest of the children beyond the reach of creditors and purpose that the *corpus* of the estate shall remain intact while the trust is being executed. Her interest in the trust estate was not affected by it in any way.    It makes no mention of the income and signifies nothing in solution of the question presented, as counsel substantially agree.

On July 10, 1920, she wrote and filed with the trustees named in the original trust deed an instrument directing that, commencing on July 1, 1920, and thereafter during the remainder of her life, they should annually pay the income derived from the trust estate, over and above $14,000 to be paid her, as the trustees in their discretion deemed could be paid without injuring the estate, to her four children named as beneficiaries in the trust deed, or, if deceased, to their representative issues in equal proportions.

About six months later, on January 31, 1921, she wrote and filed with the trustees another instrument in which she directed them to pay in equal proportions to said beneficiaries, monthly or quarterly as the trustees deemed best, all income of the trust estate above $12,000 per annum to be paid her, saying:

"This letter, in connection with the letter of July 10, 1920, shall be considered as an irrevocable assignment, for the benefit of my children, of all income of the trust estate above the sum of $12,000 per annum. This change is to date from January 1, 1921.

"I have made this modification for the reason that I find my living expenses were less than $12,000 dur-

ing the past year, at a time when I thought my expenses might possibly exceed that sum, and it has been and is my wish that all amounts not necessary for my living purposes should be divided in equal proportions among my children."

On administration of her estate, the probate court determined the inheritance tax on the theory that the beneficiaries of the trust came into enjoyment of the trust estate on January 1, 1921, except the $12,000 per annum retained by deceased, and that to realize the yearly $12,000 going to her up to the time of her death would require the income from $240,000 of the estate, computing its earnings at 5% per annum, separating the parts of the trust estate vesting *in præsenti* and *in futuro* to impress as taxable the portion necessary to produce the reserved annual income, as under that theory held proper in *People* v. *Kelley*, 218 Ill. 509 (75 N. E. 1038), a case quite analogous to this in numerous particulars.

The attorney general of the State then filed a petition with the probate court praying for a rehearing of its determination of the inheritance tax. A rehearing was granted and the previous holding adhered to, that court again finding the only part of the trust estate subject to taxation was $240,000, and, including her property disposed of by will, determined the inheritance tax against her estate to be $2,782.32.

On appeal to the circuit court of Muskegon county, the matter was heard before the court without a jury and the adjudication of the probate court sustained. Upon the hearing it was stipulated by counsel in open court in part as follows:

"That the trust deed of October 28th, 1914, a copy of which is contained in the record in this case, and the instrument filed by Margaret Welch dated July 12th (10th), 1920, an instrument filed by Margaret F. Welch and dated January 21st (31st), 1921, were not made in contemplation of death.

"It is further stipulated that the income of the trust estate in excess of fourteen thousand dollars after the execution by Margaret F. Welch of the instrument dated July 10th, 1920, was paid to her children as provided in said instrument dated July 10th, 1920; that after the execution of the instrument by Margaret F. Welch dated July (January) 31st, 1921, the income of the trust estate in excess of the sum of twelve thousand dollars per year was paid to the children of Margaret Welch as provided in the two instruments last referred to."

No question is raised but that the prescribed procedure for determining the State inheritance tax by the probate court was strictly followed in form with schedule of property, appraisement, "abstract of taxable inheritances," etc., and duly recorded at length in the probate court.    In the order of determination, following the detailed abstract of taxable inheritances, the court found deceased's taxable estate consisted of household furniture, jewelry, etc., $10,000, cash in bank $150, "enough of the Margaret F. Welch trust to produce an income of $12,000 a year, $240,000," and said in conclusion:

"The Margaret F. Welch trust is of the value of about $800,000.    The tax is determined on the theory that the beneficiaries of the trust come into the enjoyment of all but enough to produce an income of $12,000 a year in January, 1921."

Not questioning the computation as made on that theory, appellant contests the correctness of the theory under which it was made, claiming the trust estate should have been included.    Of it the attorney general says in his brief:

"The State of Michigan makes the claim that the inheritance tax imposed by the statutes of this State should be based upon the value of all of the property remaining as the remainder and residue of the trust estate at the time of the death of Margaret F. Welch, inasmuch as the transfer of all such remainder and

residue of the said trust estate was a transfer of property made by a resident of this State by deed or gift intended to take effect in possession or enjoyment at or after the death of the grantor or donor."

In addition to the stipulation of counsel that the instruments under consideration were not made in contemplation of death and payments from the income of the estate were made to her four children as provided in the two instruments named, the trial court in his finding of like import further said:

"The income of the trust estate so received by the beneficiaries was treated by them the same as any other income received by them and they paid an income tax upon the same. The beneficiaries receipted to the trustees for the income so paid to them. No power of revocation was reserved in the creator of the trust."

Counsel for appellee in their brief limit the issue over the import of the original trust deed as follows:

"The attorney general contends that if Mrs. Welch had executed no other instrument than the trust deed of October 28, 1914, the whole of the trust estate would be considered as part of her estate for the purpose of determining the inheritance tax. We agree with this contention for the reason that under the trust deed of October 28, 1914, Mrs. Welch reserved the enjoyment of the trust estate to herself.

"We, however, do not agree with the contention of the attorney general that Mrs. Welch by the trust deed of October 28, 1914, did not transfer and part with the possession of the *corpus* of the trust estate. We submit that Mrs. Welch at the time of the execution and delivery of the trust deed parted absolutely with the possession of the *corpus* of the trust estate. There was an absolute and irrevocable conveyance of the *corpus* of the trust estate."

So far as material here our inheritance tax law provides:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, *   *   *

or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property, * * *

"*Third*, When the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect, in possession or enjoyment at or after such death. Such tax shall also be imposed when any such person or corporation becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer, whether made before or after the passage of this act." * * * 3 Comp. Laws 1915, § 14524.

Our legislature adopted in substance the New York inheritance tax law. In the above quoted provisions the wording is practically identical. It is a general though not unyielding rule of construction that when one State adopts a statute of a sister State the presumption obtains that it was adopted with reference to, and in recognition of, previous constructions of its provisions in that State. It is also recognized as a general rule, supported by abundant authority, that the provisions of statutes of this nature, imposing a special tax, are not to be extended by implication beyond the clear import of the words used, since it is the duty of the taxing power to express the intent to impose such special burden in clear and unambiguous language (*Eidman* v. *Martinez,* 184 U. S. 578 [22 Sup. Ct. 515] ; *English* v. *Crenshaw,* 120 Tenn. 531 [110 S. W. 210, 17 L. R. A. (N. S.) 753] ; 37 Cyc. p. 1556).

It is conceded that the trust deed given in 1914 and the instruments which followed were not "made in contemplation of the death of the grantor," and the controlling issue, therefore, centers on whether, under the language found in the instruments of July 10, 1920, and January 31, 1921, and facts shown, the trust estate as a whole was "intended to take effect, in

possession or enjoyment at or after such death," or before.

In so far as Mrs. Welch was personally concerned, the trust deed was intended to and did take effect in title to and possession by the trustees of the estate named in it at the time it was given, to hold, conserve and manage the same for the benefit of their *cestuis que trustent*.    By that instrument she transferred, conveyed to and vested in others the legal title and right to possession of the *corpus* of the trust estate, where it remained until she died, and yet remains if the mandates of the trust are complied with.    She then made the net income it might produce under the management of the trustees a burden on the trust payable to herself during life, thereby concededly subjecting the *corpus* of the estate to the tax, as her children could not come into possession or enjoyment of it until after her death.

It so remained until July 10, 1920, when Mrs. Welch surrendered to the trust all her beneficial interest in the net income of the estate, "over and above the sum of $14,000 a year," in favor of her children, by an irrevocable instrument in writing filed with the trustees, directing how and to whom it should be paid, which she affirmed by a signed writing of like import on January 31, 1921, except that she reduced her reserved interest in the income to "$12,000 a year" after January 1, 1921, stating her reason and purpose. This was accepted and acted upon thereafter by all parties in interest.    From January 1, 1921, her beneficiaries were vested in possession and enjoyment of the trust estate, except so much as was required to produce her reserved $12,000 a year.

"An estate is vested in possession when there exists a right of present enjoyment, and is vested in interest when there is a present fixed right of future enjoyment."    *Butler* v. *Sherwood,* 186 N. Y. Supp. 712.

Her death made no difference in the rights of the parties as applied to the tax in controversy. The trust did not end with her death. The trustees were to retain title to and control of the estate for some years thereafter with the beneficiaries only entitled to receive the income. They had been receiving before her death all of it but her annuity and presumably so continued, increased, it is true, by the $12,000 a year she had previously received, but enough of the *corpus* of the estate to produce that amount annually is admittedly taxable.

"The test is always whether the property comes into possession and enjoyment of the transferee upon the death of the transferor. If the death of the transferor makes no difference in the rights of the parties there is no tax." Gleason & Otis on Inheritance Taxation (4th Ed.), 876.

While this court has not before been confronted with the exact question here, we think it can safely be said, under the construction of the "in possession or enjoyment" provision of the inheritance tax law in New York and most other jurisdictions, that had this trust deed originally made the same disposition of the income of the estate as was subsequently made by the grantor in the instant case the portion exempted by the lower court would not be taxable. In *Henry* v. *United States*, 251 U. S. 393 (40 Sup. Ct. 185), it is said:

"But for the purposes of this act (Federal tax-refunding act) the interest in a fund transferred from an estate to a trustee for ascertained persons is vested in possession no less than when it is conveyed directly to them."

The rule that an estate in possession is an estate in present enjoyment (*Eberts* v. *Fisher*, 44 Mich. 551) is generally recognized in construing the inheritance tax laws. *In re Cochrane's Estate*, 190 N. Y. Supp.

895; *Butler* v. *Sherwood,* 186 N. Y. Supp. 712; *Dexter* v. *Treasurer & Receiver General,* 243 Mass. 523 (137 N. E. 877); *Dolan's Estate,* 279 Pa. 582 (124 Atl. 176); *People* v. *Kelley,* 218 Ill. 509 (75 N. E. 1038); *People* v. *Northern Trust Co.,* 289 Ill. 475 (124 N. E. 662, 7 A. L. R. 709).

In the *Cochrane Case* the court said:

"It is significant that, in every reported case in the court of appeals where the gift was taxed, the enjoyment of the income was retained by the donor.  *  *  * The law assumes to tax a life estate given at death. Such an estate is the right to enjoy property for the life of the donee, or of some other named person.    If the enjoyment of it commences at the death of the donor, it is taxable.    If, however, it is received, possessed, and enjoyed before the donor's death, and not given in contemplation of death, it is not taxable."

We are of opinion that the grantor in the trust deed could subsequently waive in favor of the beneficiaries named in it all or a part of her reserved interest in the trust estate.    This she did with an honest intent to then and thereafter during her life promote the welfare of her children, as the record indicates, not done in anticipation of death or with any disclosed sinister motive.    It did not affect the disposition of the *corpus* of the estate or the duties of the trustees in its conservation and management.    All parties in interest accepted and complied with it during the remainder of her life.    We find no authority questioning the validity or exempting effect of such action. In *Brown* v. *Gulliford,* 181 Iowa, 897 (165 N. W. 182), the court was confronted with a subsequent surrender of income by the grantor in an inheritance tax case, involving the question of right of possession and enjoyment.    Sustaining the claimed exemption there, the court said:

"But though the deed, by reserving a life estate, worked liability to the tax, all this could be changed

by terminating the reserved estate in the lifetime of the grantor and changing the grant by adding to remainder the right to immediate possession and enjoyment.    See *Lamb* v. *Morrow*, 140 Iowa, 89 (117 N. W. 1118, 18 L. R. A. [N. S.] 226)."

Judgment will stand affirmed.

SHARPE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.    BIRD, C. J., did not sit.

Justice MOORE took no part in this decision.