[L. A. No. 21236.   In Bank.   Oct. 24, 1950.]

Estate of JOHNSON THURSTON, Deceased. THOMAS H. KUCHEL, as State Controller, etc., Appellant, v. GEORGE W. TRAMMELL, as Executor, etc., et al., Respondents.

208

James W. Hickey, Chief Inheritance Tax Attorney, Morton L. Barker, Deputy Inheritance Tax Attorney, Walter H. Miller and J. D. Lear, Assistant Inheritance Tax Attorneys, for Appellant.

George W. Trammell, in pro. per., for Respondents.

West, Vizzard, Howden & Baker as Amicus Curiae on behalf of Respondents.

TRAYNOR, J.—On October 3, 1941, decedent conveyed two parcels of real property to his children, respondents herein, and reserved to himself a life estate in each. The transfer was made without consideration, and a gift tax was paid thereon, measured by the market value of the remainder interests transferred. On December 29, 1942, decedent relinquished to respondents his life estate in one of the two parcels, for

which they paid him $10,000. The controller concedes that the consideration is adequate for the transfer of the life estate and does not contend that the original transfer of the remainder interests or the subsequent relinquishment of decedent's life estate in one of the parcels was made in contemplation of death. Decedent retained his life estate in the other parcel until his death on May 19, 1946.

The controller contends that an inheritance tax is due upon the transfer of both parcels by the deed of October 3, 1941, measured by their market value at the date of decedent's death less the consideration paid for the relinquishment of the life estate in one parcel, subject to a credit for the gift tax paid upon the original transfer. Respondents concede that the tax is properly imposed upon the transfer of the parcel in which decedent retained a life estate until his death. They object, however, to the report of the inheritance tax appraiser including as taxable the transfer of the parcel in which decedent relinquished his life estate. The trial court sustained respondents' objections and entered an order fixing the inheritance tax due. The controller appeals from that order.

Section 13644 of the Revenue and Taxation Code provides that "A transfer conforming to Section 13641 and under which the transferor expressly or impliedly reserves for his life an income or interest in the property transferred is a transfer subject to this part." No provision is made for the avoidance of the tax by the subsequent relinquishment of the reserved life estate. The controller therefore contends that the taxable event is the transfer with the reservation of a life estate, that the tax attaches at that time, and that its imposition is not affected by the subsequent relinquishment of the life estate upon which the tax is predicated. Respondents contend, however, that the tax is imposed only upon the beneficial succession to property at death and that, unless a transfer of ownership is effected at the death of the decedent, the tax cannot be sustained.

The inheritance tax is primarily a tax upon the succession to property at death. The statute expressly includes as subjects of inheritance taxation transfers of property by will, succession, or survivorship, and transfers of the proceeds of life insurance. An inheritance tax limited to the taxation of transfers from the dead to the living, however, could be easily avoided. "The common and perhaps not unnatural

aversion of property owners to the burdens of taxation appears to have applied with special force to the diminution of the estates left by them at death through the imposition of estate, inheritance, or succession taxes. The early statutes taxing property passing by will or inheritance were followed by resort to various means for avoiding subjection to the tax. Among the devices most simple and commonly resorted to were gifts in contemplation of death, and transfers, in trust or otherwise, whereby the transferor reserved to himself the life use or income for life. These artifices were met by provisions in the taxing statutes calculated to close such avenues of tax avoidance.'' (*Blodgett* v. *Guaranty Trust Co.*, 114 Conn. 207, 211-212 [158 A. 245] ; *Matter of Keeney*, 194 N.Y. 281, 287 [87 N.E. 428] ; *Helvering* v. *Bullard*, 303 U.S. 297, 302 [58 S.Ct. 565, 82 L.Ed. 852] ; *Milliken* v. *United States*, 283 U.S. 15, 20 [51 S.Ct. 324, 75 L.Ed. 809] ; *Estate of Potter*, 188 Cal. 55, 63 [204 P. 826].) Revenue and Taxation Code, sections 13641-13648, accordingly provide for the taxation of specified *inter vivos* transfers by which the owner of property retains such an interest therein or imposes such restrictions upon the use thereof that for tax purposes he is regarded as the owner of the property at his death and his transfer thereof as a testamentary disposition. ''The statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes *inter vivos* transfers that are too much akin to testamentary dispositions not to be subjected to the same excise.'' (*Helvering* v. *Hallock*, 309 U.S. 106, 112 [60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368] ; *Estate of Potter, supra*, 63; *Chambers* v. *Lamb*, 186 Cal. 261, 266 [199 P. 33] ; *Klein* v. *United States*, 283 U.S. 231, 234 [51 S.Ct. 398, 75 L.Ed. 996] ; *Goldstone* v. *United States*, 325 U.S. 687, 692 [65 S.Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1320] ; *Commissioner* v. *Cardeza's Estate*, 173 F.2d 19, 27; *Commissioner* v. *Hager's Estate*, 173 F.2d 613, 616; *In re Estate of Rising*, 186 Minn. 56, 63-64 [242 N.W. 459] ; *Cochran* v. *McLaughlin*, 129 Conn. 176, 182 [27 A.2d 120] ; *Blodgett* v. *Guaranty Trust Co.*, 114 Conn. 207, 219 [158 A. 245] ; see 1 Paul, Estate and Gift Taxation, § 2.13, p. 140; *Eisenstein, Another Glance at the Hallock Problem*, 1 Tax L.Rev. 430, 438-439; *cf.*, *Helvering* v. *Clifford*, 309 U.S. 331, 334 [60 S.Ct. 554, 84 L.Ed. 788] ; *Du Pont* v. *Commissioner*, 289 U.S. 685, 689 [53 S.Ct. 766, 77 L.Ed. 1447].) The tax is imposed on the *inter vivos* transfer but its collection is postponed until the death of the transferor, and it is measured

by the market value of the transferred property at the date of his death. (Rev. & Tax. Code, § 13402; *Chambers* v. *Lamb*, 186 Cal. 261, 266 [199 P. 33]; *Estate of Potter*, 188 Cal. 55, 59 [204·P. 826]; *Chambers* v. *Gibb*, 186 Cal. 196, 198 [198 P. 1032]; *Estate of Murphy*, 182 Cal. 740, 744, 747 [190 P. 46]; *Central Hanover Bank & Trust Co.* v. *Kelly*, 319 U.S. 94, 97-98 [63 S.Ct. 945, 87 L.Ed. 1282]; see, also, *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, 324 U.S. 108, 110 [65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227]; *Flick's Estate* v. *Commissioner*, 166 F.2d 733, 739; 58 Yale L.Jour. 313, 316.) ■ The transfer of October 3, 1941, by which decedent reserved a life estate in the property was therefore taxable under section 13644.

■ Even though a tax attaches to a transfer when the transferor has reserved a life estate in the property, however, it can be avoided by the subsequent relinquishment of the life estate before the death of the transferor, if such relinquishment is not made in contemplation of death. ■ The express purpose of the provisions for the taxation of specified *inter vivos* transfers is to reach "every transfer made in lieu of or to avoid the passing of property by will or the laws of succession." (Rev. & Tax. Code, § 13648; *Estate of Potter, supra,* 63), and only such transfers are subject to taxation. ■ The tax is not imposed on transfers not in contemplation of death to transferees whose interest in and possession or enjoyment of the property are not affected by whether the transferor lives or dies. It is immaterial whether such a transfer is accomplished by a single transaction or, as in the present case, by an initial transfer and the subsequent relinquishment, not in contemplation of death, of the only interests retained in the first transfer whose retention until the death of the transferor would have resulted in the estate or inheritance taxation of the transfer. (*Allen* v. *Trust Co. of Georgia*, 326 U.S. 630, 636, 637 [66 S.Ct. 389, 90 L.Ed. 367].)

■ Although the *inter vivos* transfer is the subject of the tax (*Helvering* v. *Hallock, supra,* 112), its taxability is determined by the restrictions on the enjoyment and possession of the property at the death of the transferor, and not by the restrictions at the time of the transfer. ■ If, notwithstanding that the transfer was taxable at the time it was made, the only retained interest upon which taxation may be predicated is extinguished before the death of the transferor, the *inter vivos* transfer is not subject to the inheritance tax.

(See Rottschaefer, *Taxation of Transfers Taking Effect in Possession at Grantor's Death,* 26 Iowa L.Rev. 514, 526.) ''The disappearance of a decedent's reversionary interest, together with the resulting estate tax liability, prior to death through events beyond decedent's control is a possibility in many situations such as the one in issue. . . . But the imposition and computation of the estate tax are based upon the interests in actual existence at the time of decedent's death.'' (*Goldstone* v. *United States,* 325 U.S. 687, 693 [65 S.Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1320] ; *Allen* v. *Trust Co. of Georgia, supra,* 637 ; *Fidelity-Philadelphia Trust Co.* v. *Rothensies,* 324 U.S. 108, 111 [65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227] ; *Estate of Madison,* 26 Cal.2d 453, 457, 462-463 [159 P.2d 630].) This reasoning has been invoked by several state courts to permit the avoidance of inheritance taxation by the *inter vivos* relinquishment of a reserved life estate under statutes, providing for the inheritance taxation of a transfer in which such life estate was reserved. (*Lamb's Estate* v. *Morrow,* 140 Iowa 89 [117 N.W. 1118, 18 L.R.A.N.S. 226] ; *Brown* v. *Gulliford,* 181 Iowa 897 [165 N.W. 182] ; *People* v. *Welch's Estate,* 235 Mich. 555 [209 N.W. 930] ; see Rottschaefer, *supra* ; *cf., Hartford* v. *Martin,* 122 N.J.L. 283, 288 [4 A.2d 31, 121 A.L.R. 354].)

After the decision of the United States Supreme Court in *Commissioner* v. *Estate of Church,* 335 U.S. 632 [69 S.Ct. 322, 93 L.Ed. 288], which overruled *May* v. *Heiner,* 281 U.S. 238 [50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244], and held that transfers made before March 3, 1931, in which the transferor reserved a life estate in the transferred property, were taxable under the provisions of Internal Revenue Code, section 811(c)*, it was generally assumed that the relinquishment of such life estates would preclude the inclusion of the trust corpus in the gross estate of the transferor, unless the relinquishment were accomplished in contemplation of death. (See Bittker, *The Church and Spiegel Cases,* 58 Yale L.Jour. 825, 857-858 ; Pavenstedt, *Congress Deactivates Another Bombshell,* 5 Tax L.Rev. 309, 336 ; Schuyler, *Escape from Spiegel,* 44 Ill. L.Rev. 131, 142-145, 148 ; Looker, *Estate Taxation of Living*

---

*Internal Revenue Code § 811:* ''The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property . . .

''(c) To the extent of any interest therein of which the decedent has at any time made a transfer . . .

''(C) intended to take effect in possession or enjoyment at or after his death.''

*Trusts,* 49 Columb.L.Rev. 437, 441, 452-453; 37 Cal.L.Rev. 134, 141-142.) The same assumption has apparently been made by Congress itself. Recognizing that many persons who had retained life estates created before March 3, 1931 in reliance on *May* v. *Heiner* would relinquish them to avoid the inclusion of the transferred property in their gross estates, Congress provided (P. L. No. 378, 81st Cong., 1st Sess.) that such life estates might be relinquished during 1949 and 1950 without liability for gift tax thereon and without incurring the risk that such relinquishment, insofar as it was made to avoid estate taxes, might be deemed made in contemplation of death. Under the rule of the Allen and Goldstone cases that "the imposition and computation of the estate tax are based upon the interests in actual existence at the time of decedent's death," the relinquishment of such life estates would clearly preclude taxation of the original transfer in which such life estates were retained, just as would the relinquishment of decedent's life estate in the present case.

*Estate of Madison,* 26 Cal.2d 453 [159 P.2d 630], on which the controller relies, does not support his position. In that case, he did not seek to tax the parts of the original transfer to the trustee that had been obtained by the beneficiaries with the trustee's consent before the donor's death. "Only the balance remaining in the trusts at the time of the father's death" was taxed. (26 Cal.2d 453, 462.) Thus, the controller in effect conceded that those parts that became completed gifts before the transferor's death were not taxable. It was emphasized that the trustor had made the gift in trust "so that, for the rest of his lifetime, the principal would be kept intact and the income would be paid to the family of which he was the head. . . . The respondents' interests were contingent upon their surviving the trustor. Each trust contained spendthrift provisions so that the beneficiaries could neither dispose of their interest in the corpus (citing cases) nor request that the trusts be terminated before the trustor's death. (Citation.) Moreover, irrespective of spendthrift provisions, the trusts could not be so terminated, since other persons, some perhaps not yet born, had possible interests in the trust property. (Citing cases.)" (*Estate of Madison, supra,* 464, 465.)

In contrast to the Madison case, the gifts here were not in trust and the trustor placed no shackles on the property that could not be and were not removed before his death. His children were the absolute owners of the realty for more than

three years before his death and could do with it what they wished.

The controller contends, however, that a construction of section 13644 contrary to his own would permit a transferor to make an essentially testamentary disposition of his property and thereby evade the inheritance tax. He contends that a transfer reserving a life estate may be made under circumstances precluding the assertion that it was made in contemplation of death, and the transferor may retain his life estate until he feels that death is imminent. It is feared that he could then, in contemplation of death, relinquish his life estate to the remaindermen, paying inheritance taxes, if any, on the transfer of the life estate only. Thus, the value of the parcel transferred to respondents is $134,000, and the value of the relinquished life estate $10,000. If decedent retained the life estate until his death, the tax would be measured by the full value of the property. By relinquishing his life estate in contemplation of death, the decedent could accomplish a testamentary disposition subject to inheritance taxation of only a fraction of the value of the transferred property.

The controller's apprehension is unfounded. Certain *inter vivos* transfers of property by which the transferor retains sufficient control over or interest in the transferred property are treated as testamentary dispositions. (E.g., *Commissioner* v. *Estate of Church,* 335 U.S. 632 [69 S.Ct. 322, 93 L.Ed. 288]; *Estate of Spiegel,* 335 U.S. 701 [69 S.Ct. 301, 93 L.Ed. 330]; *Estate of Madison,* 26 Cal.2d 453 [159 P.2d 630].) If the control or interest is retained until the transferor's death, the tax is imposed as if the transferor had remained the owner of the property until his death, and disposition of the property had been through his estate. The testamentary effect of the earlier transfer cannot be altered by a later testamentary transfer, either by will or in contemplation of death. (*Cf.,* *Allen* v. *Trust Co. of Georgia,* 326 U.S. 630, 637 [66 S.Ct. 389, 90 L.Ed. 367].) There is no reason to favor the transferor who relinquishes his interest in contemplation of death over the taxpayer who retains the shackles on the property until his death. "For the purposes of the [estate or inheritance] tax, property transferred by the decedent in contemplation of death is in the same category as it would have been if the transfer had not been made and the transferred property had continued to be owned by the decedent up to the time of his death." (*Igleheart* v. *Commissioner,* 77 F.2d 704, 711; *In re Kroger's Estate,* 145

F.2d 901, 908; *Estate of Koussevitsky*, 5 T.C. 650, 660; *Estate of Hornor*, 44 B.T.A. 1136.) ■ The life estate relinquished in contemplation of death is therefore "in the same category as it would have been if the transfer had not been made," and the tax is imposed as if it had been retained until the transferor's death. ■ A tax measured by the value of the entire corpus transferred cannot be avoided by the payment of a consideration equal to the value of the interest relinquished. ■ Under section 13644, retention of the life estate is treated as equivalent to the ownership of the entire corpus; its relinquishment in contemplation of death is therefore equivalent to a testamentary disposition of the entire corpus. The requirement of adequate consideration is designed "to prevent a man from diminishing his taxable estate by creating obligations not meant correspondingly to increase it, but intended as gifts or a means of distributing it after his death." (*Commissioner* v. *Porter*, 92 F.2d 426, 428.) It follows that a transfer in contemplation of death that reduces the transferor's taxable estate is not supported by adequate consideration within the meaning of the tax statutes. (*Phillips* v. *Gnichtel*, 27 F.2d 662, 665; *Latty* v. *Commissioner*, 62 F.2d 952, 954; see 37 Cal.L.Rev. 134, 141-142.)

■ In the present case, there is no question of attempted tax evasion. It is not contended that the relinquishment of the retained interest was in contemplation of death. The transfer and relinquishment are equivalent to an outright transfer in which the grantor, before his death and not in contemplation of death, has alienated all interest in or control over the property. The relinquishment of the life estate was therefore effective to preclude inheritance taxation of the transfer of October 3, 1941, with respect to the parcel as to which it was relinquished.

The order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J.. and Spence, J., concurred.

Appellant's petition for a rehearing was denied November 20, 1950.