[Civ. No. 2067.  First Appellate District.—June 6, 1917.]

JOHN E. McDOUGALD, Treasurer of the City and County of San Francisco, Appellant, v. ANNA WULZEN, Respondent.

INHERITANCE TAX—TRANSFERS FROM HUSBAND TO WIFE—EVIDENCE—CONVEYANCES NOT IN CONTEMPLATION OF DEATH.—Under the inheritance tax law of 1905 (Stats. 1905, p. 341), deeds of real property made by a husband to his wife, which were not recorded until after his death, which did not occur until one and one-half years after their execution, cannot be said as a matter of law to have been made in contemplation of death, where the grantor at the time of their execution was in reasonably good health for one of his years (eighty-three), not suffering from any disease and desirous of freeing himself from the burden of longer caring for his property, which care greatly annoyed him.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Hartley F. Peart, U. S. Webb, Attorney-General, Albert H. Elliott, and Gus L. Baraty, for Appellant.

James R. Kelly, for Respondent.

BEASLY, J., *pro tem.*—This is a proceeding to collect an inheritance tax on certain real property situate in the city and county of San Francisco, and conveyed by Frederick H. Wulzen, deceased, to his wife, Anna Wulzen, on July 26, 1909. The right to collect this tax is urged on two grounds, viz., that the transfer of the property was made in contemplation of death, and was not to take effect as to the grantee until after the death of the grantor. The trial court found against the plaintiff on both of these contentions, and these findings are attacked on this appeal. Whether the evidence supports them is the only question before the court. The matter is governed by the inheritance tax law of 1905 (Stats. 1905, p. 341).

A recital of the evidence in some detail seems proper. Mr. Wulzen, the grantor, was eighty-three years old on July 26, 1909. He was in reasonably good health for one of his years. He and his wife were about to celebrate the fiftieth anniversary of their marriage. He had gotten to a point in life where the care of his property annoyed him, and he told Mrs. Wulzen that he "did not wish to be longer bothered with it," and that he would give her the property to do with as she wished. The services of a notary public were thereupon engaged, and he drew deeds conveying the property from the husband to the wife, which on their face are absolute and unconditional. These deeds were executed, and the parties being both present, the deeds were, under the direction of the notary, who was also present, delivered by Mr. Wulzen manually to Mrs. Wulzen. The notary was permitted to testify that this delivery was "without condition." Mrs. Wulzen, after keeping the deeds about the house for a few days, handed them to a son of the parties with instructions to place them in a safe deposit box, which the son did. This box was rented in the name of the grantee and this son. Mr. Wulzen, the grantor, although he had access to it, never visited it. No change was made after the making of the deeds in the manner of dealing with the property. Mrs. Wulzen gave directions as to any necessary repairs or alterations of the property as she had always done, and the rent was paid at the family residence to any member of the family who was present when the tenant called with it. There is no evidence, however, that the grantor ever received it. Checks were, however, still sometimes drawn in his name by tenants when payment was made

by check. This money, received as rent, was kept in the house, used for family expenses as needed, and when a considerable sum had accumulated from the unused portion thereof it was deposited in bank to the credit of both the grantor and grantee, a course of business followed by them during many previous years. Both the grantor and grantee had access to the money while in the house, but there is no evidence that the grantor ever used any of it. One and one-half years elapsed after the deeds were delivered before the death of the grantor. He was suffering from no lingering or chronic illness during this time, and died of an acute trouble—pneumonia. The deeds were not recorded until after the grantor's death, Mrs. Wulzen explaining that she knew little of business and that they were recorded at the suggestion of her niece, who, after Mr. Wulzen's death, told her that the recording of the deeds was necessary.

Upon these facts so stated at length we are asked by the appellant to say as a matter of law that the trial court was wrong in holding that these conveyances were not made in contemplation of death. This we cannot do. Whether the deeds were made in contemplation of death and to take effect after death or not were questions for the trial court to decide upon the facts before it; and its findings on that subject could only be disturbed if there were no evidence sufficient to sustain them. In this case we think the evidence sustains the findings.

The *Estate of Reynolds,* 169 Cal. 600, [147 Pac. 268], relied upon by appellant, is clearly distinguishable from this case. In that case the grantor was the victim of a mortal disease, and knew when he executed the deeds that his days were numbered. Accordingly, the lower court in that case found—and the supreme court sustained the finding—that the deeds were made in contemplation of death—a conclusion which was inevitable from this and other facts in evidence in that matter. Here the grantor was in no immediate fear of death. Although an old man he was, as has been said, suffering from no disease, and was in good health for his years. Besides this, the circumstances under which the deeds in this case were delivered were susceptible at least of the construction that they were absolute, and were made with a distinct purpose other than escaping inheritance taxes, viz., that of freeing the grantor from the burden of longer caring for his property. While it may be conceded that if the trial court

had found that these deeds from Mr. to Mrs. Wulzen were made in contemplation of death, or to take effect after the grantor's death, this court would have sustained such finding, still the trial court having found otherwise, and its function being to place a construction upon the evidence before it, and it appearing to us that the construction so given the transaction is not unreasonable, we cannot disturb its findings.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.