LILLIAN M. WHEELER, AS EXECUTRIX OF THE LAST WILL AND TESTAMENT OF CHARLES S. WHEELER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22391.   Promulgated September 9, 1930.

*Brice Toole, Esq.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The question whether the total value of the community property of which the decedent died possessed or only one-half thereof should be included in the gross estate under the laws of California has been decided by us in *Griffith Henshaw, Executor*, 12 B. T. A. 1441. Our decision in that case was affirmed by the United States Circuit Court of Appeals, 31 Fed. (2d) 946. A rehearing was denied by the Court of Appeals on May 6, 1929, and certiorari was denied on October 21, 1929, by the Supreme Court of the United States, 280 U. S. 43A. In that case we held that the interest of the surviving wife in the community property of the deceased husband and herself both domiciled in California is subject to the Federal estate tax imposed by the Revenue Act of 1921. On the authority of that decision we rule adversely to the petitioner. *Joseph P. Levy et al.*, 18 B. T. A. 337; *Robert Swanston, Executor*, 18 B. T. A. 379.

Section 402 of the Revenue Act of 1921 provides:

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;

\*        \*        \*        \*        \*        \*        \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

The second point at issue is whether or not the trusts established by Charles S. Wheeler for the benefit of his four daughters come within the purview of section 402 above in that they were intended

to take effect in possession or enjoyment at or after his death. There is no suggestion that the trusts were made in contemplation of death.

The statute imposes an excise upon the transfer of an estate upon the death of the owner. *Y. M. C. A.* v. *Davis*, 264 U. S. 47; *Nichols* v. *Coolidge*, 274 U. S. 531; *May* v. *Heiner*, 281 U. S. 238. Death duties rest upon the principle that death is the " generating source " from which the authority to impose such taxes takes its being and " it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties." *Tyler* v. *United States*, 281 U. S. 497; *Knowlton* v. *Moore*, 178 U. S. 41. We may consider then what interest or property rights, if any, in the corpus of the trust estates were possessed by Charles S. Wheeler at the time of his death and whether or not they were of such a character as to justify the imposition of an excise upon their transfer at his death. By the terms of the declarations of trust Wheeler declared that he held certain securities as trustee for the beneficiaries, his daughters, and described the various duties and functions he was to perform as such trustee. He was to collect income therefrom and pay it over to the beneficiaries as their absolute and separate property. Under certain conditions he might pay over a part or all of the corpus of the trust, treating such payment either as an absolute gift or a loan to be repaid to the trust. In the administration of the trusts he was given full discretionary powers and the authority to exchange, sell and substitute other securities or property for the corpus as originally set aside by him. He was further empowered to use a portion or all of the capital of the trust estates in the purchase, acquisition or construction of dwelling houses to be occupied by his daughters as homes. He was given the authority to take the titles to the land on which such dwellings were erected in trust or to cause the said titles to be conveyed to his daughters; in the former event he might declare any lawful trusts " with such lawful estates and remainders, in favor of such person or persons other than his said daughters as he should in his discretion designate or appoint." The trust ceased upon the decedent's death and the funds or property remaining therein were to vest absolutely in his daughters. If the daughters should die prior to his demise, he was directed to divide the corpus of the trust estates in proportion to the number of children of such daughters. If the beneficiary should die without issue, the trust estates were to revert to the settlor. The trust could be canceled, revoked and terminated only by the joint consent of the decedent and the beneficiaries.

Under paragraph 4 of the declaration of trust, Charles S. Wheeler advanced various sums to his four daughters for the purchase of homes. The amounts remaining in the several trust funds after

deducting the sums so withdrawn for homes constituted the funds which the respondent held subject to the Federal estate tax as transfers intended to take effect in possession or enjoyment at or after the decedent's death within the meaning of section 402 (c) above. By making such advances for that purpose, Charles S. Wheeler as trustee exercised completely and fully his powers with relation to the acquisition of homes for his daughters and thereby exhausted such powers. In the case of the trusts for his daughters, Lilias, Olive, and Jean, he did not take title in trust to the land upon which the dwelling houses were erected. Upon assuming title to the home for his daughter, Elizabeth, he did not declare any further trusts for the benefit of any person other than her. Therefore, the provision permitting him to declare estates and remainders in favor of persons other than his daughters does not apply to the residue of the securities constituting the trust funds.

We are of the opinion that at the death of Charles S. Wheeler there remained in him individually no interest of any measurable value which could be included in his estate. See *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. The settlor reserved no power of disposition of the trust estate for his own individual benefit nor any testamentary control over it. See *Chase National Bank* v. *United States*, 274 U. S. 327. The trust was revocable only with the consent of the beneficiary and hence was beyond the recall of the decedent. See *Reinecke* v. *Northern Trust Co.*, *supra; May* v. *Heiner*, *supra*. The trustor retained no control, possession or enjoyment in or for himself individually. He administered the estate as a trustee and all of his acts subsequent to the creation of the trust were and could be only those of a trustee. In *Reinecke* v. *Northern Trust Co.* the court said:

\* \* \* Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute.

Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits or the enjoyment of the property. He would equally have reserved all these powers and others had he made himself the trustee, but the transfer would not for that reason have been incomplete. The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift *inter vivos* not subject to the tax.

In *May* v. *Heiner*, *supra*, the trust therein established provided that the beneficiary should receive the income from the trust estate during his lifetime and thereafter it should revert to the settlor and

after her death to certain designated distributees. The court there held that the trust was not within the purview of section 402 (c) and cited *Reinecke* v. *Northern Trust Co.*, *supra*, as follows:

In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest, which is transferred. \* \* \* One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift *inter vivos*, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result, and we think it is wanting in the present statute. \* \* \*

The case at bar is similar to *May* v. *Heiner*, *supra*, in that all or a portion of the trust estate might revert to the settlor upon the death of the beneficiary.

We are of the opinion that respondent erred in including in the taxable estate the remainder of the trust estate.

*Decision will be entered under Rule 50.*