GEORGE L. HARTFORD AND JOHN A. HARTFORD, AS TRUSTEES, ETC., PROSECUTORS-APPELLANTS, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, DEFENDANT-RESPONDENT.

Argued October 18, 1938—Decided February 6, 1939.

For the prosecutors-appellants, *Pitney, Hardin & Skinner* (*Shelton Pitney* and *Donald B. Kipp,* of counsel).

For the defendant-respondent, *David T. Wilentz,* attorney-general (*William A. Moore,* of counsel).

The opinion of the court was delivered by

HEHER, J. Conceding that the settlor's reservation of an equitable life interest in the subject-matter of the original trust deed of April 7th, 1915, rendered taxable the subsequent estates for life and in remainder as transfers "intended to take effect in possession or enjoyment at or after" the settlor's death, within the purview of section 1 of chapter 228 of the laws of 1909, as amended by chapter 151 of the laws of 1914 (*Pamph. L.* 1909, *p.* 325; *Pamph. L.* 1914, *p.* 267; *R. S.* 1937, 54:34-1c), appellants nevertheless insist that, by force of the settlor's assignment, on June 1st, 1917, of his reserved life estate to the succeeding life *cestuis,* there was a merger of his life estate in those limited over to the children, and the latter's "life estates therefore came into possession and enjoyment forthwith," rather than "at or after their father's death," and the "vesting of the remainder interest in possession and enjoyment became entirely independent of and unrelated to the date" of the settlor's death.

More specifically, it is said that, in consequence of the settlor's assignment of his life interest, the "possession and enjoyment" of the interests held by the succeeding life *cestuis* under the original grant, and of the estates in remainder, were "not limited in any way by or postponed until" the settlor's death; that the estates of these life *cestuis* "could not come into possession or enjoyment at or after" the settlor's

"death because they came into possession and enjoyment while he was alive;" that the "ultimate distribution of the *corpus* became dependent only upon the death of the five children;" and that "had they (the children) predeceased" the settlor, "the *corpus* would have been distributed and the trust would have terminated during his lifetime." And it is argued that the donor "could not have *intended* to pass any estate or interest *at or after his death,* in or in respect of the trust property, for he had none such."

There is invoked the common law principle that whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated, or is, as is said in law, merged in the greater; and also the accepted view, in the application of this principle, that an estate *pur autre vie* merges in an estate for one's own life, the latter being the greater estate. 2 *Bl. Com.* 177; *Coke's Litt.,* §§ 41b, 42a.

And, proceeding on the premise that the legislative design was to impose a tax upon transfers essentially testamentary in character, it is maintained that "the date of death and not of the trust deed governs the taxability" of the transfers, and therefore the two instruments must be considered as one in determining the character of the transfers as regards taxability—citing *Carter* v. *Bugbee,* 91 *N. J. L.* 438; *affirmed,* 92 *Id.* 390; *American Board of Commissioners of Foreign Missions* v. *Bugbee,* 98 *Id.* 84; *Congregational Home Missionary Society* v. *Bugbee,* 101 *Id.* 214; *Koch* v. *McCutcheon,* 111 *Id.* 154; *Burnet* v. *Guggenheim,* 288 *U. S.* 280; 53 *S. Ct.* 369; 77 *L. Ed.* 748.

The tax commissioner, on the other hand, argues *in limine* that in such cases the settlor's reservation of income from or some interest in the subject-matter of the transfer (*e. g.,* the power to revoke, alter, or amend the declaration of trust) is not determinative of taxability under the statutory classification of transfers intended to take effect in possession or enjoyment at or after his death; and that the assignment of the settlor's life interest in the trust *res* did not operate to take the transfers out of this particular class.

There would seem to be no reason in principle why the settlor's reservation of an interest in the trust *res* should be the test of taxability. The question is, after all, one of statutory construction; and the statute, in language that does not reasonably admit of doubt as to the legislative intention, renders taxable all transfers "by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or *intended* to take effect in *possession or enjoyment* at or after such death." The major objective was to impose an inheritance or succession tax upon transfers testamentary in character; and, for the effectuation of the statutory scheme, transfers made "in contemplation of death," or "intended," regardless of the time of the vesting of title, to take effect "in possession or enjoyment" at or after the donor's death, were placed in the tax category. A less rigid interpretation would open the door to evasion and fraud; and thus the plainly expressed legislative purpose would be subverted.

The statute levies an excise on the right or privilege of succeeding—as distinguished from the right of transmission—to the possession or enjoyment of property, or an interest therein. *Turner* v. *Cole,* 118 *N. J. Eq.* 497. The privilege of succession—the "shifting of the economic benefits and burdens of property"—is the thing taxable under the statute. *Plainfield Trust Co.* v. *McCutcheon,* 8 *N. J. Mis. R.* 593; *affirmed,* 108 *N. J. L.* 201; *Saltonstall* v. *Saltonstall,* 276 *U. S.* 260; 48 *S. Ct.* 225; 72 *L. Ed.* 565. The criterion of taxability under this particular head is whether "there is an estate passing" at or after the death of the donor. *Koch* v. *McCutcheon, supra.* And it is a settled rule of interpretation that, "so long as the privilege of succession has not been fully exercised," it is within the statutory class, and that "technical distinctions" recognized by the law relating to estates in realty will not be permitted to defeat the plainly expressed legislative will. *Plainfield Trust Co.* v. *McCutcheon, supra; Saltonstall* v. *Saltonstall, supra.* See, also, *Hasbrouck* v. *Thayer Martin,* 120 *N. J. Eq.* 96; *In re Hollander,* 123 *Id.* 52; *In re Honeyman's Estate,* 98 *Id.* 638; *Bryant*

v. *Hackett,* 118 *Conn.* 233; *Hackett* v. *Bankers Trust Co.,* 122 *Id.* 107.

In all seeming, the dispositive question is whether the shifting of the possession and enjoyment of the subject-matter of the succession is dependent upon the settlor's death. Is his death a determinative factor in the devolution of the possession and enjoyment of the estates granted? In *Coolidge* v. *Commissioner of Corporations, &c.,* 268 *Mass.* 443; 167 *N. E. Rep.* 757, Chief Justice Rugg, in construing a statute similarly phrased in this regard, declared: "The excise statute here controlling and already quoted is designed to include within its sweep all methods of succession to property to take effect in possession or enjoyment after the death of the grantor or donor other than those made *inter vivos* for a *bona fide* consideration. By express words it embraces succession created by deed. Whenever property is conveyed upon such limitation that it will vest in interest, possession or enjoyment by reason of the death of the grantor or donor, such succession falls within the descriptive words of the statute. The succession to any of these attributes of property occurring as the result of the death of the grantor or donor constitutes the taxable commodity. * * * If the beneficiary under the instrument of gift succeeds to an interest in the property not previously enjoyed, which bears a distinct and necessary relation to the death of the grantor or settlor, that is a succession subjected to the excise by the terms of the statute." While the judgment in this case was overruled by the federal Supreme Court, the reversal was grounded upon the retroactive application of the statute in contravention of the contract and due process clauses of the Federal Constitution. *Coolidge* v. *Long,* 282 *U. S.* 582; 51 *S. Ct.* 306; 75 *L. Ed.* 562. But there is no occasion to pursue the inquiry to a conclusion.

Here, by the original grant, the settlor made such reservation of interest in the subject-matter thereof as to indubitably stamp the transfers in question as subject to the succession tax; and it would indeed be an anomaly, plainly perversive of the spirit of the statute, if the subsequent assignment of the

reserved income to the succeeding life *cestuis,* motivated as contended by appellants, should operate to remove the transfers at issue from the inheritance tax category.

Evidence was introduced by appellants, in the form of affidavits, tending to show that avoidance of the "burden of income taxes, present and future," incident to the entry of the United States into the World War—the settlor considered "the proposed taxes as confiscatory"—was the primary reason for the assignment, although the settlor also designed "at the same time to put" his sons, George L. and John A., "in the enjoyment of larger incomes." They had urged upon their father that their "salaries of $30,000 each were not commensurate with" their "responsibilities." The fact is, however, that the settlor's income so reserved was divided equally between his five children. The explanation is that George L. and John A. were unwilling to risk possible family criticism and differences arising from inequality, as regards the five children, in the distribution of the reserved income.

But, however this may be, the proof thus made negatives the existence of an intention by the settlor to effect a merger of his life interest with the succeeding estates for life. Viewing the evidence so adduced in its strict literalness, it signifies that the settlor, by this assignment, addressed himself merely to the disposition of the retained income, and not to the acceleration of the successive estates limited by the original deed of trust to take effect in possession or enjoyment at and after his death. By the original grant, the trust could be terminated, "by the unanimous consent of the trustees and majority consent in writing of said five children, the survivors or survivor of them," only after the death of the settlor; and a purpose limited to the avoidance of prospective income taxes upon his reserved life income, and incidentally to augment the income of his children, or some of them, is not, standing alone, indicative of an intention to effect the substantial modification of the original grant—in this and other particulars not necessary to be mentioned—that, in the view of appellants, would flow from the application of the doctrine of merger.

Whatever may have been the rule under the early common law, the doctrine of merger is not now operative, either at law or in equity, if thereby the intention of the parties will be frustrated. *Holcomb* v. *Lake,* 24 *N. J. L.* 686; *affirmed,* 25 *Id.* 605; *Den* v. *Vannest,* 10 *Id.* 102; *Andrus* v. *Vreeland,* 29 *N. J. Eq.* 394; *Clos* v. *Boppe,* 23 *Id.* 270; *Schmeidler* v. *Meyer,* 97 *Id.* 335; *In re Nilsson,* 112 *Id.* 445; *Anthony* v. *Camden Safe Deposit and Trust Co.,* 106 *Id.* 41; *Pedrick* v. *Guarantee Trust Co.,* 123 *Id.* 395; *Purefoy* v. *Rodgers,* 2 *Saund.* 380; 85 *Eng. Reprint* 1181.

But the argument is also made that, "if there were no merger," the settlor's "intention might well have been defeated," in that "the income of each child's share would have been payable, after the death of such child before" the settlor's "death, to the estate of such child, so long as" the settlor "continued to live, instead of to the deceased child's issue in accordance with the terms of the trust."

This presupposes a specific intent—much broader than is indicated by the evidence in its literal acceptation—that would be served only by the invocation of the principle of merger, *i. e.,* the acceleration of the enjoyment of the estates limited to take effect after his death. And this, in turn, suggests, as the ultimate purpose of the settlor, the conversion into non-taxable transfers of the successive taxable estates created under the deed of trust to pass in possession and enjoyment at and after his death. He was then eighty-four years of age. Some five months before, he was stricken with angina pectoris, a heart ailment of especial gravity at his age; and that disease resulted in his sudden death on the ensuing August 29th. In that situation, the assignment would seem to be classable as made in contemplation of death within the intendment of the statute. On the hypothesis of the asserted intention, the natural inquiry would be what in all human likelihood could the ultimate purpose have been if not to accelerate the possession and enjoyment of the estates thus limited to take effect after his death so as to render the recipients exempt from the statutory excise. In that view, what inference would reasonably be deducible from

the evidence introduced by appellants, considered in relation to all the circumstances, that tax avoidance—in another direction—was the dominant motive for the assignment?

The statute, as so amended, was designed to prevent circumvention of its essential scheme; and the courts are enjoined, by elementary canons of construction, to effectuate that purpose. · Devices that have no apparent purpose save the evasion of the excise levied by the statute will be disregarded.

We are not called upon to deal with the point that the statutory rate of interest, ten per cent., should not be exacted under the circumstances. The point was not raised in the Prerogative Court or in the Supreme Court, and therefore need not be considered here.

The judgment is accordingly affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 12.

*For reversal*—None.