[S. F. No. 16970. In Bank. May 31, 1945.]

Estate of FRANK D. MADISON, Deceased. HARRY B. RILEY, as State Controller, etc., Appellant, v. MARSHALL P. MADISON, as Executor, etc., et al., Respondents.

454

Raymond G. La Noue, Inheritance Tax Attorney, Arthur W. Brouillet, Deputy Inheritance Tax Attorney, Richard C.

O'Connor, Assistant Deputy Inheritance Tax Attorney, for Appellant.

Pillsbury, Madison & Sutro for Respondents.

TRAYNOR, J.—On August 19, 1935, the decedent created three trusts, one each for his two daughters and one for his son. The corpus of each trust consisted of stocks and bonds valued at approximately $100,000. The provisions of the trusts material to this case were identical.

Each trust was to continue for the life of the trustor, during which time the income from the son's trust was to be accumulated, while the income from the daughters' trusts was to be paid to them. Each trustee was authorized, if he deemed it in the best interest of the beneficiary, to deliver to him upon request portions of the corpus not to exceed an aggregate of $50,000 plus 50 per cent of any property that the trustor might add to the trust. Under this provision, one daughter received 20 per cent and the other 30 per cent of the corpus of her trust before their father's death.

Upon the termination of each trust upon the trustor's death, the corpus (together with the accumulated income in the case of the son's trust) was then "to go to and vest in" the respective beneficiaries. If a beneficiary did not survive the trustor, the property, both income and principal, was to go as the beneficiary might appoint by will; in default of such appointment it was to go to his or her children and their heirs.

Each trustee was given complete authority to manage and control the respective trust estates. None of the trusts could be revoked or amended, and the trustor made no reservations in his favor, although he expressed the wish that his consent be obtained before the trustee sold or otherwise disposed of the trust property. The interests of all beneficiaries were protected by spendthrift provisions and thus could not be assigned or subjected to the claims of creditors. The decedent's son was named trustee of his sisters' trusts. The decedent himself became trustee of his son's trust. In 1938, however, a law partner of both the decedent and his son was appointed trustee of the latter trust.

At the time of the execution of the trusts, decedent wrote a letter to his son, stating that the transfers were made, not in contemplation of death, but to avoid high income taxes, to make his daughters independent of the monthly allowances that he

had previously been giving them, and to place his son in a position substantially equal to theirs. The trustor was then 68 years old, healthy, active and vigorous. He died six years later from causes unforeseen at the time the trusts were executed.

The controller seeks to collect an inheritance tax upon the transfers on the grounds that they were intended to take effect in possession or enjoyment at the donor's death and that they were made in contemplation of the donor's death. (Inheritance Tax Act of 1935, Deering's Gen. Laws, 1935 Supp., Act 8495, § 2 (3) (b) and § 2 (3) (a) ; Stats. 1935, ch. 358, § 2(3) (b) and § 2 (3) (a).) There was no conflict in the evidence on either issue. The trial court entered judgment in favor of respondents and the controller appeals.

Section 2 (3) (b) of the Inheritance Tax Act of 1935 imposes a tax upon the "transfer of any property . . . in trust or otherwise . . . (3) When the transfer is of property made by a resident or by a nonresident . . . (b) Intended to take effect in possession or enjoyment at or after such death, or in which a life income or interest is reserved by the grantor, either expressly or impliedly, or by the grantee promising to make payments to or care for the grantor." ■ Respondents contend that whether a given transfer was intended to take effect in possession or enjoyment at or after death is a question of fact, on which a decision of the trial court supported by substantial evidence is conclusive. This contention may be valid when the transferor's intention is not set forth in a written instrument but must be determined from the surrounding circumstances, or when there is an attempt to tax an otherwise nontaxable transfer by proof of a parol agreement inconsistent with the terms of the instrument of transfer. (*Kelly* v. *Woolsey,* 177 Cal. 325 [170 P. 837] ; *Spreckels* v. *State,* 30 Cal.App. 363 [158 P. 549] ; *McDougald* v. *Wulzen,* 34 Cal.App. 21 [166 P. 1033] ; *Estate of Schmidt,* 49 Cal.App. 2d 86 [121 P.2d 104].) In this case, however, decedent's intention was clearly set forth in the trust instruments. No attempt was made to show that he had any other intention. No question as to the construction of the trust instrument is presented. The issue is simply whether the transfer intended and made is a transfer covered by the statute. ■ The construction of a statute and its applicability to a given situation are matters of law to be determined by the court. (*County of Sierra* v. *County of Nevada,* 155 Cal. 1, 14 [99 P. 371] ; *Signal*

*Hill* v. *County of Los Angeles,* 196 Cal. 161, 168 [236 P. 304] ; *Bodinson Mfg. Co.* v. *California Employment Com.,* 17 Cal.2d 321, 326 [109 P.2d 935] ; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825] ; *Mitchel* v. *Brown,* 43 Cal.App.2d 217, 222 [110 P.2d 456] ; see 23 Cal.Jur. 719; 10 Cal.Jur. 882.)

Respondents contend that regardless of the provisions in the gift instrument, an *inter vivos* gift is never taxable under section 2 (3) (b) unless title, possession, or enjoyment are retained by the donor until his death. The precise question has never been passed upon in this state. Respondents call to our attention the case of *Estate of Schmidt, supra,* which they deem conclusive. In that case a gift of shares from a husband to his wife was held not taxable on the ground that it had been made "without any reservation and without any intention that it should take effect in possession or enjoyment at or after the death of the deceased." (49 Cal.App.2d 86, 89.) The ground upon which the controller relies here was not available to him in *Estate of Schmidt,* for there were no trust or other restrictions on the possession and enjoyment of the property in that case.

The transfer that the controller seeks to tax is that which occurred in 1935 when the trusts were created. (*Hunt* v. *Wicht,* 174 Cal. 205 [162 P. 639, L.R.A. 1917 C 961] ; *Estate of Potter,* 188 Cal. 55 [204 P. 826].) The issue is not whether the donor retained some power or interest until his death, but rather whether he tied up the property with so many strings, which could not be loosened until his death, that the transfer may be regarded as having been intended to take effect in possession or enjoyment at his death within the meaning of the statute. It should be noted at the outset that the statute speaks, not of title, but of possession and enjoyment. Were it not for worthy authority to the contrary, a gift of income for the trustor's life with remainder at the trustor's death would appear from the plain wording of the statute to be a transfer intended to take effect in possession or enjoyment at or after death. In the early case of *In re Cruger* (54 App.Div. 405 [66 N.Y.S. 636], aff'd 166 N.Y. 602 [59 N.E. 1121]), in which the facts as to part of the property transferred were similar to those of the present case, the court said: "If there were no authority, we should think that the plain reading of the statute brought this case within its terms." (54 App.Div. 405 [66 N.Y.S. 636, 638].) More recently, in *Hartford* v.

*Martin,* 122 N.J.L. 283 [4 A.2d 31, 121 A.L.R. 354], the court said: ''There would seem to be no reason in principle why the settlor's reservation of an interest in the trust res should be the test of taxability. The question is, after all, one of statutory construction, and the statute, in language that does not reasonably admit of doubt as to the legislative intention, renders taxable all transfers '. . . *intended* to take effect in *possession or enjoyment* at or after . . . death.' '' (122 N.J.L. 283, 286 [4 A.2d 31, 121 A.L.R. 354].)

Yet the courts are sharply divided on the question of the taxability of trusts such as these under statutes similar to ours. The leading case against taxability is *Reinecke* v. *Northern Trust Co.* (278 U.S. 339 [49 S.Ct. 123, 73 L.Ed. 410]), construing section 402(c) of the Revenue Act of 1921, (42 Stat. 278, now § 811(c) of the Internal Revenue Code, 26 U.S.C.A. § 811(c)), in which the United States Supreme Court held that trusts like those here involved were not intended to take effect in possession or enjoyment at or after death. The court pointed out that in its plan and scope the tax was one imposed on transfers made at death or in contemplation of death and that the only section imposing the tax, section 401 (42 Stat. 277), did so on the net estate of a decedent. The court then continued: ''In the light of the general purpose of the statute and the language of section 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in section 402(c) 'to take effect in possession or enjoyment at or after his death,' include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under section 401.'' (278 U.S. 339, 348 [49 S.Ct. 123, 73 L.Ed. 410].) That doubt the court resolved in favor of the taxpayer.

The Reinecke case arose under an estate tax statute, whereas our statute imposes an inheritance tax. There are distinctions between the federal estate tax system and the inheritance tax system prevailing in most states—distinctions to which this court had occasion to refer in *Estate of Miller* (184 Cal. 674 [195 P. 413, 16 A.L.R. 694]) as follows: ''The California tax is a succession tax, a tax on the beneficial interest of each beneficiary or heir. . . . The federal tax . . . on the other hand, is not a succession tax, but an estate tax, not a tax on what comes to the beneficiaries or heirs, but upon what is left by the decedent.'' (184 Cal. 674, 678.)

Section 401 of the federal act imposes the tax upon the decedent's net estate ''to the extent of the interest therein of the decedent at the time of his death.'' (§ 402(a), 42 Stat. 278.) In the California act there is no provision making the reservation of an interest by the donor the test of taxability. Moreover, while *Reinecke* v. *Northern Trust Co., supra,* has not been overruled, the authority of that case has been considerably diminished by subsequent decisions of the United States Supreme Court.

*Reinecke* v. *Northern Trust Co., supra,* was decided in 1929. Less than two years later the United States Supreme Court held in *May* v. *Heiner* (281 U.S. 238 [50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244]), that a gift with a reservation of a life estate to the donor was not a transfer intended to take effect in possession or enjoyment at or after death. In retrospect, it does not seem surprising that a court that was about to interpret section 402(c), *supra,* so strikingly in terms of a shift in title rather than a shift in possession or enjoyment should have decided the Reinecke case as it did. To a state court, however, that long before the decision in *May* v. *Heiner, supra,* had upheld the taxability of gifts reserving a life estate to the donor (see *Estate of Felton,* 176 Cal. 663 [169 P. 392]; *Estate of Murphy,* 182 Cal. 740 [190 P. 46]; *Estate of Potter, supra,* the Reinecke case might not appear authoritative. In *Helvering* v. *Hallock,* 309 U.S. 106 [60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368]) the United States Supreme Court itself made a significant change in its approach to problems involving transfers intended to take effect at or after death. In that case the donor retained no life estate, but the property was to revert to him if he survived the life tenant. If he did not, the remainder went to his children. The donor died first and the court sustained the inclusion of the corpus in his gross estate for estate tax purposes. In *May* v. *Heiner, supra,* the lapse at the donor's death of his interest in the property, a life estate, was not enough to support the tax, for according to the court, no interest then passed from the dead to the living. It is difficult to believe that the court found in the lapse of the donor's possibility of reverter in *Helvering* v. *Hallock, supra,* an interest passing from the dead to the living sufficient to satisfy the requirements of *May* v. *Heiner, supra.* It is more likely that the court had ceased to ''subordinate the plain purposes of a mod-

ern fiscal measure'' (*Helvering* v. *Hallock, supra* at p. 112) to technical considerations of property law. In fact the court said as much in *Helvering* v. *Hallock* in refusing to distinguish, for estate tax purposes, the various casuistries of the law of remainders.

The extent to which the Supreme Court has departed from its early interpretation of the federal act is shown even more clearly in *Fidelity-Philadelphia Trust Co.* v. *Rothensies* (—— U.S. —— [65 S.Ct. 508, 89 L.Ed. ——]) construing the corresponding sections of the Revenue Act of 1926 (44 Stat. 70). There the trustor retained a life estate, after which the property was to go to her two daughters for life with a remainder to their surviving issue. If no issue survived the daughters, the corpus was to go as the trustor might appoint by will; in default of such appointment named charities were the ultimate beneficiaries. Taxability was conceded, but the estate sought to avoid paying a tax on the entire value of the property at the time of the trustor's death. Since the trustor had retained a life estate, all that was needed to sustain a tax on the entire value was to overrule *May* v. *Heiner, supra*. The court, however, rested its decision on the ground that the trustor retained a string, which, upon certain contingencies, would have permitted her to direct by will the further disposition of the corpus. The retention of such a string, the court said, ''might have resulted in altering completely the plan contemplated by the trust instrument for the transmission of decedent's property. . . .'' (65 S.Ct. 508, 510.) Consequently the value of the entire corpus was subject to the tax. The retention of that string, however, could have no effect on the daughters' life estates. It gave the trustor control over the disposition of the property only after the daughters' interests had terminated, or after the death of both daughters in the trustor's lifetime precluded their life estates from coming into existence. The daughters' interests were contingent upon their surviving their mother; but that contingency was created by the mother's retaining a life estate, not by her retaining a reversionary interest. (See Nelson, The Stinson Case, 23 Tax Magazine 245.) A quotation from *Commissioner* v. *Estate of Field,* —— U.S. —— [65 S.Ct. 511, 89 L.Ed.——], a companion case, shows even more clearly the court's present approach: ''The estate tax is not based on the value of the reversionary interest of the decedent at the time of his death but on the value . . . of the property to which that . . .

interest relates. It makes no difference . . . how remote or uncertain may be the decedent's reversionary interest. If the corpus does not shed the possibility of reversion until at or after the decedent's death, the value of the entire corpus on the date of death is taxable.'' (65 S.Ct. 511, 512.) Although the decedent in *Fidelity-Philadelphia Trust Co.* v. *Rothensies, supra,* retained a reversionary interest until his death, the tax was not measured by the extent of his interest at the time of his death. The value of the entire corpus was taxed, not merely the value of the reversionary interest. If a reversionary interest has no more than a nominal value, a tax measured by the entire corpus is necessarily imposed on the transfer of an interest that the decedent had not retained but had allowed to pass to the living before his death. The fact that the value of the entire corpus of a trust is now subject to the federal tax, even though the interest retained by the trustor is unsubstantial, suggests that the retention of an interest by the donor has become less significant as a test of taxability than the restrictions imposed by him on the possession or enjoyment of the property until his death. (See 1 Paul, Federal Estate and Gift Taxation, 297; *Inter Vivos Transfers and The Federal Estate Tax,* 49 Yale L.J. 1118, 1123.)

Respondents rely on cases from several states in addition to *Reinecke* v. *Northern Trust Co., supra.* In re *Prange's Will,* 201 Wis. 636 [231 N.W. 271], was decided exclusively on the authority of the Reinecke case. Nor is there any compelling argument in favor of plaintiffs' position in *People* v. *Welch's Estate,* 235 Mich. 555 [209 N.W. 930].) *Safe Deposit Etc. Co.* v. *Bouse,* 181 Md. 351 [29 A.2d 906], is not in point, for the transfer there in question took place before the enactment of the statute. Cases from New York are cited by the controller as well as by respondents. The law in that state appears unsettled. (Compare In re *Cruger, supra;* In re *Patterson's Estate,* 127 N.Y.S. 284, aff'd 204 N.Y. 677 [98 N.E. 1109]; *In re Dunlap's Estate,* 205 App.Div. 128 [199 N.Y.S. 147]; with *In re Schweinert's Estate,* 133 Misc. 762 [234 N.Y.S. 307]; *In re Kirby's Estate,* 228 App.Div. 171 [239 N.Y.S. 390], aff'd 254 N.Y. 624 [173 N.E. 894].) In *In re Dolan's Estate,* 279 Pa. 582 [124 A. 176, 49 A.L.R. 858], the court refused to sustain the tax even though the donor reserved a power of revocation. That case is therefore not pertinent here, although it no doubt indicates that a jurisdiction that does not allow

taxation when a power of revocation is reserved would *a fortiori* reject it when no reservation whatever is made by the grantor. In Illinois, the rule against taxability seems to have originated in an unsupported dictum in *People* v. *McCormick*, 327 Ill. 547 [158 N.E. 861], a case in which the transfer was held taxable. Moreover, it should be noted that Illinois is another minority jurisdiction in which gifts with the reservation of a power of revocation are held not taxable (*People* v. *Northern Trust Co.*, 289 Ill. 475 [124 N.E. 662, 7 A.L.R. , 709]; see Rottschaefer, *Taxation of Transfers Taking Effect in Possession at Grantor's Death*, 26 Iowa L.Rev. 514, 529).

Respondents contend that the cases upon which the controller relies all come from jurisdictions with rules of property law opposed to the rules adopted in California. Whether that be true or not is immaterial, for the reasoning in these cases is based on realistic considerations regarding the possession and enjoyment of the property that are as relevant here as in those jurisdictions. Moreover, the case upon which respondents rely as establishing the California rule of property law does not preclude taxation in the present case. *Hunt* v. *Wicht*, *supra*, holds merely that the statute does not apply retroactively. Nor is respondents' position improved by considering the trustee an agent of the beneficiary. The trustee no doubt acquired possession before the trustor's death, but his enjoyment was as limited as that of the beneficiary.

With the trustee's consent, each beneficiary could have obtained, and decedent's daughters did obtain, portions of the trust property. The controller does not seek to tax the portions thus advanced, but only the balance remaining in the trusts at the time of the father's death. It is true that, since the value of each trust might have fallen in the trustor's lifetime below the limit of $50,000 set upon withdrawals, the trusts might conceivably have terminated before his death. This provision shows no more than that the trustor had alternative intentions. He made dispositions intended to take effect at his death, yet indicated his willingness that they be defeated under certain contingencies. It is irrelevant that his dispositions were subject to certain contingencies now that those contingencies can no longer occur. In fact, the trusts lasted until the trustor's death, and the trustor certainly intended that the transfer of what remained of the corpus should take effect in possession or enjoyment at his death. No tax is imposed upon the transfer of the portions released in

his lifetime. But to the extent that the transfers took effect at death, as he intended, the tax should be upheld. "In a possible contingency . . . enjoyment . . . might have begun while the grantor was yet in being. We think this feature is insufficient to take the case out of the rule. . . . We are to view the sequence of events in the order of the actual rather than the possible." (*Matter of Schmidlapp*, 236 N.Y. 278, 285-286 [140 N.E. 697].)

 Respondents finally contend that the controller's admitted failure in 1923 to tax similar trusts, the trusts involved in *Wheeler* v. *Commissioner*, 20 B.T.A. 695, amounted to an administrative construction of the statute, and that this construction was adopted by the Legislature in 1935 when it reenacted the statute, and now precludes taxation in this case. Mere failure to act, however, does not constitute an administrative construction. (*Louisville* v. *Board of Education*, 154 Ky. 316 [157 S.W. 379], and cases cited in 2 Sutherland, Statutory Construction (3d ed.), p. 520, n. 9.) Moreover, an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change. (*Whitcomb Hotel, Inc.* v. *California Emp. Com.*, 24 Cal.2d 753, 757-758 [151 P.2d 233], and cases therein cited.)

 The purpose of the Legislature in imposing a tax on transfers intended to take effect at or after death is to prevent avoidance of the inheritance tax. "The sole reason for mentioning dispositions *inter vivos* . . . is to prevent the evasion of the tax . . . by such dispositions. In contemplation of that law [the inheritance tax law], the gifts *inter vivos* therein mentioned are all presumed to have been made with the intent to evade the tax imposed on transfers taking effect by succession at death." (*Estate of Potter, supra,* 63.) Section 2(3) (b) does not impose a tax upon certain precisely defined transfers; it is rather an attempt to impose a tax in all cases, regardless of the form of transfer adopted, in which possession or enjoyment does not take effect until the donor's death.

 Even though a trustor may have parted with all interest in the property, limitations that he has imposed will last as long as the trust lasts. Decedent's children were all over 21 years of age at the time the trusts were created. The daughters were married. It is unlikely, therefore, that decedent

entertained any doubts as to the ability of the beneficiaries to manage the property. If it had been because of such doubts that he chose to make the gifts in trust rather than outright, he hardly would have provided that the trusts should terminate upon his death. Moreover, since the trusts are not in the nature of a family settlement, with the usual provisions for life estates to children and remainders to grandchildren, the conclusion is inescapable that decedent advisedly chose to make gifts in trust so that, for the rest of his lifetime, the principal would be kept intact and the income would be paid to the family of which he was the head. ''The case presents a typical one of a donor possessed of large property interests denuding himself of his possessions and placing them in the friendly hands of his immediate family, taking care to see that they do not get away from his own superior control as head of the family during his lifetime. . . . It is said that no income was reserved to the grantor. In literal terms this is true . . . but in substance it was otherwise. The highest instincts of the family are to guard and protect, and, if necessary, provide for its members. The close relation of its members could leave no doubt that the donor was placing the property in the hands of those to whom he could look with every assurance that any or all of the income would be his for the asking. It was as to the income potentially within the donor's reach and as to the entire principal a transfer intended to take effect at his death.'' (*Koch* v. *McCutcheon*, 111 N.J.L. 154, 156-157 [167 A. 752].) To the same effect are *In re Hollander's Estate,* 123 N.J.Eq. 52 [195 A. 805]; *Hartford* v. *Martin, supra; State Street Trust Co.* v. *Treasurer,* 209 Mass. 373. [95 N.E. 851], and *Coolidge* v. *Commissioner,* 268 Mass. 443 [167 N.E. 757]. The United States Supreme Court reversed the latter case, but on grounds that had nothing to do with the construction of the statute. (*Coolidge* v. *Long,* 282 U.S. 582 [51 S.Ct. 306, 75 L.Ed. 562].) Of all the cases that support the controller's position, perhaps none contains so clear an analysis of the problem involved as a recent Connecticut case, *Bridgeport City Trust Co.* v. *McLaughlin*: ''. . . The necessary intent existed that some change in the son's rights in the trust property should take effect on his (the trustor's) death. . . . The next question is, was this change a transfer of possession or enjoyment . . . taxable under the statute? . . . The death of the settlor broke the shackles of the trustee's management of the trust and gave the son the right to use the principal as his own property. . . . To most persons the transfer of the un-

bridled right to handle money which they have previously been unable to invest or spend at all except as the net income is doled out to them by a trustee, would constitute a transfer of a considerable amount of enjoyment in the money. . . .'' (Prentice-Hall Inheritance and Transfer Tax Service, vol. 2, p. 1025 of Connecticut section.) Although the Supreme Court of Errors of Connecticut has had no opportunity to pass upon that case, its position on the question is clearly stated in *Bryant* v. *Hackett*, 118 Conn. 233, 244 [171 A. 664]: ''This purpose and policy might be as completely defeated by a transfer of property in such a way that the owner has parted with all control and dominion over it as by one where he reserves such control. Such a reservation might perhaps make taxable a transfer which otherwise would not be, but the lack of it does not prevent the taxation of transfers falling within the terms of the statute.''

It should be noted that the ''shackles'' of the trusts were stronger in the present case than in some of the cases just cited. The respondents' interests were contingent upon their surviving the trustor. ■ Each trust contained spendthrift provisions so that the beneficiaries could neither dispose of their interest in the corpus (*Seymour* v. *McAvoy*, 121 Cal. 438, 442 [53 P. 946, 41 L.R.A. 544]; *McColgan* v. *Magee, Inc.*, 172 Cal. 182, 186 [155 P. 995, Ann.Cas. 1917 D 1050]; *Estate of Edwards*, 217 Cal. 25, 27 [17 P.2d 116]; *Kelly* v. *Kelly*, 11 Cal.2d 356, 362 [79 P.2d 1059, 11 A.L.R. 71], see 23 Cal.Jur. 519) nor request that the trusts be terminated before the trustor's death. (*Fletcher* v. *Los Angeles Tr. & Sav. Bank*, 182 Cal. 177, 179 [187 P. 425].) ■ Moreover, irrespective of spendthrift provisions, the trusts could not be so terminated, since other persons, some perhaps not yet born, had possible interests in the trust property. (*Gray* v. *Union Trust Co.*, 171 Cal. 637 [154 P. 306]; *Estate of Washburn*, 11 Cal.App. 735 [106 P. 415]; *Woestman* v. *Union Trust etc. Bank*, 50 Cal.App. 604 [195 P. 944]; *Hunt* v. *Lawton*, 76 Cal. App. 655 [245 P. 803]; *Estate of Easterday*, 45 Cal.App.2d 598 [114 P.2d 669].)

In view of our decision that the gifts here involved were intended to take effect in possession or enjoyment at death, there is no need to consider the contention that they were made in contemplation of the donor's death.

The judgment is reversed.

Gibson, C. J., Carter, J., and Peters, J. pro tem., concurred.

SCHAUER, J.—I dissent. Under our system of government wherein the basic power reposes in the people as distinguished from the state it is a fundamental principle that "tax proceedings are in invitum, tax laws are strictly construed in favor of the taxpayer and against the state . . . because presumptively the Legislature has given in plain terms all the power intended to be exercised. A statute will not be held to have imposed a tax unless it is clear and explicit." (See 24 Cal.Jur. § 11, pp. 27-28, and cases there cited.) Here the involved statute provides that "A tax shall be and is hereby imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons, institutions or corporations, . . . said taxes to be upon the market value of such property at the date of death of the decedent [transferor] . . . in the following cases: . . . (3) When the transfer is of property made by a resident . . . (a) In contemplation of the death of the grantor, . . . or donor, or, (b) Intended to take effect in possession or enjoyment at or after such death, or in which a life income or interest is reserved by the grantor, either expressly or impliedly, or by the grantee promising to make payments to or care for the grantor . . . (d) *By a revocable trust* created before or after the taking effect of this act.

"When such person, institution or corporation becomes beneficially entitled to possession or expectancy to any property or the income therefrom by any such transfer, whether made before or after the passage of this act.

"In all transfers inter vivos the value of the property transferred shall be taken as of the date of death of the transferor and with the rates and exemptions then in effect. . . ." (Italics added. Deering's Gen. Laws, 1937, Act 8495, § 2, pp. 3955-3956.)

The trial court found upon ample evidence that the transfers in question were not made in contemplation of the death of the grantor. It is also indisputable that the trusts created were and are *irrevocable*, but the majority opinion, after a discussion of decisions of both the United States Supreme Court and the courts of other states, reaches the conclusion that the California Legislature intended by its use of the words "Intended to take effect in possession or enjoyment at

or after such death" to include as subject to an inheritance tax an *irrevocable* transfer in trust of property, made several years prior to the transferor's death and at a time when he was in excellent health, even though by such transfer the transferor completely divested himself of all ownership or interest in the property transferred and of all power to control its use or disposition.

The sole ground advanced or relied upon by such opinion to justify imposition of the tax is that the trusts were to, and did, terminate at the end of a period of time measured by the transferor's life; and the conclusion is asserted in face of the fact that several years before the transferor's death the transfers had been completed and both enjoyment and possession of the property had passed irrevocably from the transferor to the joint unit of trustee and beneficiary in each of the respective trusts.

It apparently is not contended that if the duration of the trusts had been measured by any event other than the termination of the transferor's life the transfers would have been subject to an inheritance tax upon the death of the transferor, and it is my opinion that the mere fact that the death of the transferor is selected as the event upon which the legal title to the corpora of the estates shall be conveyed by the trustees to the beneficiaries is not sufficient to justify us in holding that as a matter of law the transferor intended the transfer of the property "to take effect in possession or enjoyment at or after" his death within the meaning of those words as employed by the Legislature in the Inheritance Tax Act. The possession and enjoyment of the property, and its control, passed completely from the transferor when he created the trusts. Such possession, enjoyment, and control of the property, upon creation of the trusts, vested irrevocably in the trustees and beneficiaries. The effect of the majority opinion is to impose a penalty upon the beneficiaries solely because the transfers were made in trust for them instead of directly to them. I am aware of no policy of the law which justifies such a holding.

In *Reinecke* v. *Northern Trust Co.* (1929), 278 U.S. 339 [49 S.Ct. 123, 73 L.Ed. 410], the decedent, several years before his death and at a time when there was no federal gift tax, created five trusts with life estates in the incomes on terms not disclosed in the opinion. "In one the life interest was terminable five years after the death of the settlor or on the death

of the designated life beneficiary should she survive that date, with a remainder over. In the other four, life interests in the income were created, terminable five years after the settlor's death or on the death of the respective life tenants, whichever should first happen, with remainders over. The settlor reserved to himself power to supervise the reinvestment of trust funds, to require the trustee to execute proxies to his nominee, to vote any shares of stock held by the trustee, to control all leases executed by the trustee, and to appoint successor trustees. With respect to each of these five trusts a power was also reserved 'to alter, change or modify the trust,' which was to be exercised in the case of four of them by the settlor and the single beneficiary of each trust, acting jointly, and in the case of one of the trusts, by the settlor and a majority of the beneficiaries named, acting jointly.

"The settlor died without having . . . modified any of the five trusts except one, and that in a manner not now material." (278 U.S. at p. 344.) The federal estate statute imposed a tax "upon the transfer of the net estate of every decedent" and provided that in calculating the tax there should be included in the gross estate all property, tangible and intangible, "To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death."

The Supreme Court, in holding that the transfers were not subject to the federal estate tax, stated (pp. 346-348 of 278 U.S.), "Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits or the enjoyment of the property. He would equally have reserved all these powers and others had he made himself the trustee, but the transfer would not for that reason have been incomplete. *The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made.* [Italics added.] His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift *inter vivos* not subject to the tax. . . .

"In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred.

. . . It is not a gift tax. . . . One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift *inter vivos,* equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute. . . . In the light of the general purpose of the statute and the language of § 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in § 402(c) 'to take effect in possession or enjoyment at or after his death,' include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under § 401. That doubt must be resolved in favor of the taxpayer.''

It is argued in the majority opinion that the Reinecke case has been weakened by subsequent decisions of the Supreme Court. Suffice it to point out that such case has not been overruled, that its sound logic remains unimpaired, and that the facts and circumstances of the litigation now before us present a manifestly stronger case for the taxpayer than did those of the Reinecke case. Here the transferor reserved no control over the property conveyed and all of it vested immediately in full possession and enjoyment in the respective units of trustees and beneficiaries. Furthermore, our statute undertakes to specifically enumerate the ''cases'' in which the tax shall be operative and in such enumeration lists a transfer ''By a *revocable* trust created before or after the taking effect of this act.'' (Italics added.) This statute is creative and in such a case it is a well established rule of construction that the enumeration of certain powers or items is exclusive of all others. (23 Cal.Jur. § 118, p. 740; 2 Sutherland, Statutory Construction (Horack's ed. 1943) § 4915, p. 414; *People* v. *McCreery* (1868), 34 Cal. 432, 442; *San Joaquin etc. Irri. Co.* v. *Stevinson* (1912), 164 Cal. 221, 234 [128 P. 924]; *Pasadena University* v. *Los Angeles County* (1923), 190 Cal. 786, 790 [214 P. 868]; *Gruben* v. *Leebrick & Fisher, Inc.* (1938), 32 Cal.App.2dSupp. 762, 765 [84 P.2d 1078]; see, also, *Johnston* v. *Baker* (1914), 167 Cal. 260, 264-265 [139 P. 86]; *Moore* v. *Webb* (1933), 219 Cal. 304, 309 [26 P.2d 22, 89 A.L.R. 925];

*In re Peart* (1935), 5 Cal.App.2d 469, 472 [43 P.2d 334].) There is no sound basis for assuming that the Legislature would have specifically designated a *"revocable* trust" as being subject to the tax, without any mention of irrevocable trusts, if it had intended also to tax the latter.

It is to be noted that the Supreme Court in *May* v. *Heiner* (1930), 281 U.S. 238, 244 [50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244], followed the Reinecke case and that *Helvering* v. *Hallock* (1940), 309 U.S. 106 [60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368], does not purport to overrule it. In fact the author of the opinion in the Helvering case expressly states (p. 110 of 309 U.S.) that "Whether the transfer made by the decedent in his lifetime is 'intended to take effect in possession or enjoyment at or after his death' *by reason of that which he retained,* is the crux of the problem." (Italics added.) As previously observed, in the case now before us, the grantor retained nothing. In *Fidelity-Philadelphia Trust Co.* v. *Rothensies* (1945), —— U.S. —— [65 S.Ct. 508, 89 L.Ed. ——], the Supreme Court again had a tax question before it but again did not depart from the Reinecke holding. Mr. Justice Douglas, in a concurring opinion, specifically pointed out that "The District Court found that this trust was 'intended to take effect in possession or enjoyment at or after' the death of the decedent. The Circuit Court of Appeals agreed. Certiorari was not granted on that question but only on the question whether the entire value of the corpus of the trust at the time of decedent's death should be included in her gross estate." The trust involved was one in which the grantor *reserved to herself* during her life the income of the trust.

Subsequent to the execution of the trust grants here involved the people of this state enacted the Gift Tax Act of 1939. Such act provides a tax upon the transfer of property as an *inter vivos* gift and specifically provides that the word "transfer," as used therein, "includes the passing of property or any interest therein, in possession or enjoyment, present or future, by gift, or any transfer made with donative intent" (Gift Tax Act of 1939, Deering's Gen. Laws, Act 8495c, § 4) and that "The tax applies whether the transfer is in trust or otherwise, whether the gift is direct or indirect . . ." (Id., § 13). It seems to me that common honesty and fairness to the taxpayer, let alone that plane of integrity which is due from the state in its dealings with its citizens, demand that we ap-

praise the transactions now before us as being either *inter vivos* gifts or as transfers in contemplation of, or to take effect upon, death. We cannot fairly classify such transactions as having two inconsistent characters. It would be sharp dealing, unworthy of a democracy, to look back upon a transaction preceding the Gift Tax Act, which transaction clearly amounted to a gift *inter vivos* and not to a transfer in contemplation of death or to take effect only upon death, and to classify it as subject to inheritance tax purely for the sake of garnering income to the state.

The Inheritance Tax Act has not been materially amended in its pertinent application to this case since the creation of the trusts in controversy. If those trusts, created in 1935, are properly subject to inheritance tax, then the same trusts, if created now, would be subject to such tax. Surely my brethren of the majority opinion would not go so far as to hold that the transfers of 1935 were "in contemplation of the death" of the grantor or to "take effect in possession or enjoyment at or after such death" within the meaning of the Inheritance Tax Act and at the same time classify them as transfers *inter vivos* so as to subject them to the gift tax. Manifestly if the property interests did not pass until death of the grantor then the transfers are subject to inheritance tax but equally manifest is it that if such property interests *in their full value* were transferred when the trust grants were executed then such transfers would be, if made after enactment of the Gift Tax Act, subject to the gift tax. The mere fact that they were made prior to the enactment of the Gift Tax Act of 1939 cannot operate to bring them within the otherwise inapplicable Inheritance Tax Act. Certainly, unless we are prepared to hold that the transfers now before us, if they were to take place *subsequent* to the enactment of the Gift Tax Act, would nevertheless be subject to the Inheritance Tax Act and not to the Gift Tax Act, we should not hold that they are subject to such Inheritance Tax Act merely because they originated prior to the enactment of the Gift Tax Act.

Lastly, it must be noted that the trial court found as a fact, upon conflicting inferences, in substance that the transfers in question were intended to, and did, take effect immediately upon the execution of the trust grants and that they were *not* "intended to take effect in possession or enjoyment [only] at or after such [the grantor's] death." The majority opinion lists a number of facts and circumstances in evidence which

it argues support the inference that the transfers were intended to take effect in possession or enjoyment at or after the grantor's death. But the drawing of such inferences and the effect to be given them were matters properly for the determination of the trial court. The rule is that an "appellate court will accept or adhere to the interpretation [of a document] adopted by the trial court—and not substitute another of its own— . . . where parol evidence was introduced in aid of its interpretation, and such evidence . . . is such that conflicting inferences may be drawn therefrom." (4 Cal.Jur. 10-Yr.Supp. 1943 rev. § 192, pp. 146-147; see, also, 2 Cal. Jur. § 549, pp. 934-935.)

Unless we are to depart from long established law, including the basic principle that the people are to be served before the state, the judgment should be affirmed.

Shenk, J., concurred.