property as the petitioner requests, if it is established that it was. executed by the decedent animo testandi at a time when she was competent to make a will; and that the present proceedings should be continued for the purpose of enabling the parties to litigate those questions.

Decreed accordingly.

(45 Misc. Rep. 559.)

### In re SKINNER'S ESTATE.

(Surrogate's Court, Westchester County. December, 1904.)

TRANSFER TAX—PROPERTY SUBJECT.

An owner of land deeded it to another in trust for the use of the grantor during his natural life, and at his death to become the property of the grantee. There was a collateral agreement that the grantor might at any time during his life have the use of any portion of the property, and the grantee covenanted to execute any instrument necessary to carry into effect such understanding. *Held* that, the grantee having never become the absolute owner of the property until the death of the grantor, a transfer tax should be assessed on the property.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 1686, 1700, 1702.]

In the matter of the appraisal of the estate of Samuel P. Skinner. From a decree entered on report of the official appraiser, the executor appeals. Affirmed.

Edward W. Davidson, for appellant.
Frank M. Buck, for State Comptroller, respondent.

SILKMAN, S. This is an appeal taken by the executor of the estate of Samuel Perry Skinner, assigning several grounds of error in the judgment entered upon the report of the official appraiser. The principal ground of error goes to the validity of the entire decree, the appellant claiming that the estate is not subject to any transfer tax whatsoever. It appears that a verbal contract or agreement was entered into by and between decedent and Frances A. Skinner, his wife, with Edward D. W. Langley, on July 27, 1899, to the effect that said Langley should act for said Samuel P. Skinner and wife, and should care for each in every way possible, as long as they lived; in return for which services said Skinner and wife agreed that they each would execute a will in the other's favor, and further agreed that the survivor should execute a will in Langley's favor. Decedent executed a will bearing date May 27, 1901, giving the residue of his estate after the payment of debts and a small legacy to his wife, if she survived him; otherwise the whole estate was given to said Langley. Frances A. Skinner executed a will dated May 22, 1901, whereby she gave all her property to her husband, if he survived her; otherwise one-half of her estate was given to said Langley. Frances A. Skinner died June 14, 1901, leaving her husband surviving her. Samuel Perry Skinner died November 20, 1901, leaving the above-mentioned will, which has been admitted to probate. On June 28, 1901, and after the death of his wife, Samuel P. Skinner transferred to said Langley, by deed, all his real and

personal property, including therein all his interest in the estate of his wife, in consideration of $1, "and in the further consideration of said Langley's services heretofore rendered me and to be hereafter rendered me as my private secretary and business manager and in looking after and caring for my personal wants and comforts in traveling and in other divers ways." The habendum clause in the deed is as follows:

"To have and to hold the same unto the party of the second part, his executors, administrators and assigns forever, in trust nevertheless, for the use and benefit of the party of the first part hereto during the term of his natural life, and at his death to become the property of the party of the second part absolutely.

"And I do hereby make, constitute and appoint the said party of the second part my true and lawful attorney, irrevocable in my name or otherwise, but at his proper costs and charges, to have, use and take all lawful ways and means for the recovery of the said properties, moneys and interest, and in case of payment of any or all of the same, to discharge the same as fully as I might or could do if these presents were not made."

Attached to this deed is an agreement executed and acknowledged on the same day as the deed, in the following form:

"It is mutually understood and agreed by and between the parties to the within instrument, that the ownership and title to the properties assigned, sold, transferred, granted, bargained, released and set over therein shall be held by the party of the second part, in trust for the use and benefit of the party of the first part during his life, and that said party of the first part shall and may at any time during his life, have and use any part or portion of the properties herein mentioned; and the party of the second part hereby covenants and agrees that he will at the request of the party of the first part at any time, make, execute, and deliver any instrument or instruments that may be requisite or necessary to carry into effect the foregoing understanding and agreement."

The net estate passing to Langley is found by the report of the appraiser to be $105,527.73. An order or decree was entered May 14, 1904, confirming the report of the transfer tax appraiser, and assessing the tax at the sum of $5,276.73.

The two instruments above mentioned having been executed at the same time, viz., June 28, 1901, must be construed together as a single agreement. Matter of Brandreth, 169 N. Y. 437–440, 62 N. E. 563, 58 L. R. A. 148. There is no ambiguity and no contradiction in the language used in these instruments. The grantor and grantee therein agree that all the property transferred shall be held by Langley "in trust for the use and benefit of the party of the first part hereto [Skinner] during the term of his natural life." None of it becomes the property of Langley individually until after the death of Skinner. Until that event shall have happened Langley remains simply the care-taker and custodian of all the property and trustee thereof for Skinner. Langley also agrees to hold himself in readiness at all times to execute any instrument necessary to make all the property available for the use and benefit of Skinner, and at his request; also that Skinner might have and use at any time any part or all of the property mentioned. Under this agreement Skinner could at any time have demanded, and was entitled as matter of right to have, an accounting by Langley as to his stewardship. In view of this agreement most of the testimony offered on this ap-

praisal on behalf of the executor becomes immaterial. Whatever Langley, after this agreement was executed, forthwith proceeded to do by way of exercising acts of personal ownership over portions of this property, does not matter. Everything was done subject to the terms and conditions of this agreement. The oral agreement of July 27, 1899, the wills of both husband and wife, made in May, 1901, and finally the deed and agreement of June 28, 1901, unmistakably show the intent of the parties, and all point to the death of the survivor of Skinner and his wife as the date to which was postponed both possession and enjoyment of all this property by Langley, the individual, as distinguished from Langley, the trustee or agent. On the facts there can be but one conclusion, viz., that Langley did not, and it was never intended that he should, become the absolute owner of this property, until at or after the death of Skinner, and that the transfer tax has been properly assessed. Matter of Cornell, 170 N. Y. 423, 63 N. E. 445; Matter of Brandreth, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148.

The facts in the case at bar showing that decedent reserved a life interest to himself are stronger than in Matter of Cornell, supra. In that case there were two gifts. As to the first gift, there was an understanding merely that the donor was to have the income from the securities as long as he lived. There was a written agreement to the second gift to the same effect. In both cases there was a valid gift and delivery of the property. At page 426 of 170 N. Y., page 446 of 63 N. E., the court says:

"By such delivery the donee did not become the absolute owner of the securities transferred to him, but, as the donor reserved a life interest, the donee, during the donor's life, held the securities in trust to pay the income to the donor. * * * In case of the death or insolvency of the donee or of his failure to comply with his agreement, a court of equity would have appointed a new trustee of the fund, and the testator would not have been relegated to the position of a mere creditor of the donee."

None of the other grounds of appeal require any discussion, the appellant failing to demonstrate any error committed by the appraiser. The appeal should be overruled, and the decree assessing and fixing the transfer tax should be affirmed, with costs.

Decree affirmed, with costs.