## In re PATTERSON'S ESTATE.

(Surrogate's Court, Chautauqua County. December 19, 1910.)

1. TAXATION (§ 879*)—INHERITANCE TAXES—TRANSFERS SUBJECT.

   The test of taxability of a transfer under the inheritance tax statute (Consol. Laws, c. 60, art. 10) is when the gift was intended to take effect.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

2. TAXATION (§ 879*)—INHERITANCE TAXES—TRANSFERS SUBJECT.

   A trust deed giving all the income of an estate to beneficiaries for the grantor's life and the corpus at his death is, as to the corpus, a transfer intended to take effect at grantor's death and hence subject to inheritance tax.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

3. TAXATION (§ 879*)—INHERITANCE TAXES—TRANSFERS SUBJECT.

   A trust deed made concurrently with a will and following the same scheme of distribution to the same beneficiaries, requiring payment to grantor of a specified amount annually out of the income to be made up out of the corpus if necessary, and requiring distribution at grantor's death, provided for a transfer effective at grantor's death, and hence is subject to inheritance taxes; the deed not showing an intention to immediately surrender dominion over the estate in excess of that necessary to earn the stipulated annual amount.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

In the matter of the inheritance tax upon the estate of Susan Patterson. Order directed.

Moot, Sprague, Brownell & Marcy, for the Patterson estate.
Rollin W. Snow, for State Comptroller.

CROSBY, S. To say nothing of the magnitude and importance of this case, and the almost certainty that it will be passed upon by higher courts, the nice question of law involved makes it proper for the surrogate to state his reasons for his decision and the process by which he reached it. There is not a question of fact in the case. There might have been one, but it was removed by stipulation in open court that $220,000 was the amount necessary to produce the income of $12,-000 a year, reserved to the grantor in the trust deed, hereinafter more fully dealt with. The matter is all reduced to a question of law.

It is the usual practice in these tax matters for the surrogate to make an order pro forma, affirming the county treasurer's report, and assessing the tax in accordance with said report, and then passing upon the matter more carefully and judicially when the matter later comes before him on appeal. The statute (Consol. Laws, c. 60, art. 10) seems to contemplate this practice, and to treat the surrogate first as a taxing officer and later a judicial officer. The parties interested, however, have expressed the wish that the surrogate should give this matter his best attention and most careful review in the first instance. This will be done, not, however, with any hope of satisfying both parties to the controversy.

Susan S. Patterson died September 27, 1909. On May 22, 1903, she executed her will disposing of $55,092.51 worth of property. On the same day she executed and delivered a trust deed disposing of $769,733.62 worth of property. By the terms of the trust deed decedent provided that the trustees assume control of the property, which they did, and that they pay her $12,000 a year during her life out of the income, if sufficient. If insufficient that they resort to the principal to make up the $12,000. It was stipulated by the parties and found by the appraiser that $220,000 out of the principal of the trust fund was necessary to produce the aforesaid income of $12,000 per year, to be paid by the trustees to the grantor. It was conceded by the attorneys for the estate—who are also the attorneys for said trustees—that a tax is properly assessable against the $55,092.51 left by will, and also against $220,000 necessary to produce the income payable to the grantor during life. The one question is as to the taxability of the remainder of the trust fund.

The trust deed provided that the annual income from the trust fund, over and above the $12,000 a year, should go to the beneficiaries in certain proportions, and that at the grantor's death the whole trust fund should go to the same beneficiaries in the same proportions. It is not contended by the Comptroller that the accumulated income during the grantor's life, over and above the $12,000 a year, payable to her, is taxable, although it was in the hands of the trustees and undivided at the death of decedent, and the appraiser has excluded such accumulated income from the amount found by him to be taxable.

It is noteworthy that the will and the trust deed were executed on the same day, and both follow the same scheme of distribution; the executors named in the one and the trustees named in the other being the same persons, and the beneficiaries under the will and in the trust deed being the same persons, and taking the same proportionate shares under each. These facts strongly suggest that the trust deed was made in preparation for death; although there is nothing to show that death was impending, or soon expected, and was probably not contemplated within the meaning of the words of the statute. See Matter of Spaulding, 49 App. Div. 541, 63 N. Y. Supp. 694. It is necessary, therefore, to determine whether the transfer by trust deed was "intended to take effect in possession or enjoyment at or after such death."

The learned attorney for the Comptroller points out that, by the terms of the trust deed, the entire property was liable for the payment of the annual income of $12,000 to the grantor—that is to say, if the income were any year insufficient, the corpus was to be used to make up the fixed amount of $12,000 a year, reserved to the grantor— and that therefore this case falls within the rule of that long line of cases holding that a trust deed, by which the corpus of property is to go to the grantee at the death of grantor, and the life use is reserved to the grantor, is a transfer of property intended to take effect at the death of the grantor, and that the transfer is taxable. Matter of Green, 153 N. Y. 223, 47 N. E. 292; Matter of Skinner, 45 Misc. Rep. 559, 92 N. Y. Supp. 972; Matter of Cornell, 170 N. Y. 423, 63 N. E. 445; Matter of Brandreth, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148.

It is to be noticed that by the wording of the statute the intention of the parties as to when the gift is to take effect is the test of taxability, and the learned attorney for the decedent's estate contends that at the time of making the trust deed the parties must have known and intended that this enormous estate could easily produce income enough to pay the grantor $12,000 a year, without resort to the principal, and that, therefore, the grantor's intention was to surrender dominion over all but the $220,000 found to be necessary to earn the $12,000 a year, and that the transfer of all but the $220,000 was complete when the deed was delivered, and therefore not taxable. This contention is somewhat weakened by the fact that the grantor actually did make the corpus of the estate liable for her annual income of $12,000. She had enough doubt concerning the earning capacity of the estate so that she inserted that provision in her deed. Furthermore, one of the trustees, to wit, John D. Patterson, testified before the appraiser as follows:

"The income upon the securities turned over to the trustees was not greatly in excess of the monthly payments made to Susan S. Patterson, provided for in the trust agreement."

The witness is here referring, I believe, to the first few years of his administration of the trust. I can hardly believe, however, that the proper theory of taxing the property passing by this trust deed (over and above the $220,000, conceded to be taxable) is the remote possibility that it might have been resorted to to pay the grantor her $12,000 a year. I believe that the authorities sustain the proposition that a trust deed giving all the income of an estate to beneficiaries for the life of the grantor and the corpus at grantor's death, is, so far as the corpus is concerned, a transfer intended to take effect in possession and enjoyment at the death of grantor, and therefore taxable. In such a case the beneficiary possesses and enjoys the income during the life of the grantor, but possession and enjoyment of income is not possession and enjoyment of the principal which produces that income. It seems to me that the plain wording of the statute is enough to fix taxability upon the entire corpus of the property passing by this trust deed, even if the entire income derived therefrom had gone to the beneficiaries from and after the delivery of the deed, because, by the terms of the deed, the corpus was intended to pass into the possession and enjoyment of the beneficiaries at or after the death of the grantor.

Very few cases that are exactly in point have been called to our attention. In the Matter of Masury, 28 App. Div. 580, 51 N. Y. Supp. 331, affirmed without opinion in 159 N. Y. 532, 53 N. E. 1127, there is, to be sure, some language indicating the belief of the justice who wrote the opinion (Woodward, J.) that when a trust deed vested the immediate use of the income of a fund in the beneficiary, and the corpus of the fund at the death of the grantor, the fund is not taxable as a transfer intended to take effect at the death of the grantor. But this language is superfluous to the decision of the point at issue in that case, and does not seem to be followed by later authority. In the Masury Case the exact point was this: Under the trust deed, the income of the trust fund was to go to the beneficiaries till a certain

date (his twenty-first birthday), and upon that certain date the principal of the fund was to go to the beneficiaries. In the trust deed a power of revocation was reserved to the grantor, which he might exercise at any time during his life. All that the court in the Masury Case decided was that the reservation of the power of revocation at any time during life did not mark the transfer as one intended to take effect at death. The court was clearly right. The mere fact that death marked the ending of the period during which the power of revocation could be exercised, in no wise affected the evident intention of the grantor, as shown by the terms of the grant, that the gift was to take effect on a day certain, regardless of whether the grantor was then living or dead. The court's decision was that the fund was not taxable, but it was not based upon the ground that the income went immediately to the beneficiary, but was made to rest upon the answer to the question "whether they (the gifts) were in some manner contingent upon the death of the said J. W. M." (the grantor). The court said that that was "the only point at issue in determining this appeal."

In Matter of Bostwick, 160 N. Y. 490, 55 N. E. 210, the Court of Appeals intimates having "gone too far in generally affirming the Masury decision." In the Bostwick Case the terms of the trust deed were substantially the same as in the Masury Case, except that instead of the principal sum going to the beneficiary on a day certain, as in the Masury Case, it was to go to the beneficiary at the death of the grantor, as in the case at bar. In both cases, as in the case at bar, the income went to the beneficiary from and after the delivery of the deed, and during the life of the grantor, and in the Bostwick Case the principal fund is taxed. In the Bostwick Case the grantor in his trust deed reserved the power to revoke the grant; also "to alter or to amend the trust"; also "to withdraw any portion of the trust properties"; also "to exchange any portion of the same"; also "to add to the trust"; also "to control any sale or other disposition by the trustees of the securities." In the matter of powers reserved this case might at first glance seem to differ from the Masury Case wherein only the power to revoke was reserved; but let us see: Could any of these powers add anything to a power of absolute revocation? Are any of them more destructive of the absoluteness of the grant than the single power to terminate or revoke the grant entirely? If the grantor can revoke his deed he can then do anything with it. Without further words or ado he can exercise all the additional powers mentioned in the trust deed in the Bostwick Case. So there is no difference between the Masury Case and the Bostwick Case in this regard. The only difference is that in the Masury Case the corpus of the estate was intended to pass upon the grantee's majority, and in the Bostwick Case it was intended to pass on the death of grantor. This difference, then, resulted in a tax in the Bostwick Case and no tax in the Masury Case.

The matter of Keeney, 194 N. Y. 282, 87 N. E. 428, cited by the attorneys for decedent's estate, seems at first glance to sustain their contention; but, let us see: A trust deed was made, by the terms of which one-fourth of the income of certain personal property was payable to grantor during life, and three-fourths of the income was pay-

able to the beneficiary during the life of the grantor, and after the death of the grantor the whole income or the principal was to be turned over to the beneficiary. The Court of Appeals sustained an order taxing the one-fourth part of the trust fund, overruling certain objections to the constitutionality of the tax act, but the court not only did not pass upon the question of the taxability of the three-fourths part of the fund, but took pains to state "it was not contended before the surrogate that three-fourths of the trust estate, the income of which was payable to the intestate's children, were subject to a transfer tax" (citing Matter of Masury, supra), thereby making it clear that the question before us now was not passed upon in that case.

In the Keeney Case, the court at page 286 of 194 N. Y., at page 429 of 87 N. E., uses this apt language, showing the danger of a failure to exercise a watchful care over the kind of transfer with which we are now dealing:

"A not wholly unnatural desire exists among owners of property to avoid the imposition of inheritance taxes upon the estates they may leave, so that such estates may pass to the objects of their bounty unimpaired. It is a matter of common knowledge that for this purpose trusts or other conveyances are made whereby the grantor reserves to himself the beneficial enjoyment of his estate during life. Were it not for the provision of the statute which is challenged, it is clear that in many cases the estate on the death of the grantor would pass free from tax to the same persons who would take it had the grantor made a will or died intestate. It is true that an ingenious mind may devise other means of avoiding an inheritance tax, but the one commonly used is a transfer with reservation of a life estate."

People v. Kelley, 218 Ill. 509, 75 N. E. 1038, seems to be a case exactly in point, and the statute in Illinois is the same as in New York. There the holding was distinctly in favor of the nontaxability of that portion of the trust fund the income of which was payable to the beneficiary during the life of the grantor. But I do not believe the holding in that case is good law in New York state, for in Matter of Cruger, 54 App. Div. 405, 66 N. Y. Supp. 636, we have a case apparently exactly in point in which the whole trust fund was taxed, although the income to be derived therefrom (except the surplus income, if any, over and above $1,200 a year) went to the beneficiary during the grantor's life from the time the trust was created. And the court there said:

"The present case seems to fall squarely within the terms of the statute."

And in commenting on the Matter of Green, 153 N. Y. 223, 47 N. E. 292, the court said:

"It was there held that the real question was not whether the remainders vested at the time of the creation of the trust, as is the present claim of the respondent, but whether the remainders were intended to take effect in possession or enjoyment at or after the death of the donor. In the present case, as in that case, although the remainders must be held to have vested, yet the remainderman could not have had actual possession and enjoyment, or right of possession until after the death of the founder of the trust."

I am led to the conclusion that decedent's trust deed of May 21, 1903 (acknowledged May 22, 1903), was a transfer intended to take effect (so far as the principal is concerned) at or after the death of decedent, and is taxable.

An order will enter accordingly.