## Hess Trust

*John M. Ranck,* for appellant.

*Harold E. Martin,* for Pennsylvania Department of Revenue.

APPEL, P. J., April 15, 1948.—By appeal to this court, the Chase National Bank of the City of New York, as succeeding trustee of the inter vivos trust created by Charles Wilbur Hess while a resident of the State of Illinois (and before his subsequent residence and death in Lancaster County, Pa.), it is contended that the assets of the trust, consisting entirely of intangible personal property located in the State of New York and never within the State of Pennsylvania, are not subject to the provisions of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, and its supplements, 72 PS §2301.

The original trust agreement was executed on March 26, 1929, by Charles Wilbur Hess, while a resident of the State of Illinois. In it the National Park Bank of New York, a corporation with principal place of business in the City, County and State of New York, was named, and accepted, the office of trustee. The Chase National Bank of the City of New York, present appellant, became successor trustee by merger on August 24, 1929, with the National Park Bank of New York.

On April 1, 1929, Charles Wilbur Hess declared himself to be a resident of the State of New York, in which State he continued to reside until the year 1937, when he became a resident of the Commonwealth of Pennsylvania, in Caernarvon Township, this county, where he continued to be domiciled and to be one of two joint owners of real estate until his decease on October 18, 1946.

None of the securities or assets which Charles Wilbur Hess transferred from time to time to said trustee under the inter vivos trust were physically located or situated within the Commonwealth of Pennsylvania while owned by him or by the trustee or successor trustee. From time to time Charles Wilbur Hess, while a resident of Pennsylvania, modified and amended the trust agreement by increasing the amount to be paid

to certain beneficiaries under the trust. On October 10, 1946, the date of his death, the principal of the trust estate amounted to $276,016.63.

Thereafter, the Chase National Bank of New York, successor trustee of the trust, qualified as executor of decedent's will and codicils thereto, and as said executor, filed a schedule of decedent's assets on the form of the Pennsylvania Department of Revenue. In answer to Question 4 of schedule "C" of this form, "Did decedent, *at any time*, transfer any property in trust by deed or agreement?" the executor inserted the word "Yes", followed by this explanation:

"On March 26, 1929, decedent, then of the City and State of New York, created a revocable deed of trust, reserving the income therefrom to himself for life and naming the National Park Bank of New York (of which the Chase National Bank of the City of New York is the successor) as trustee. The deed of trust was executed in New York; the trust assets have always been physically situated in New York; the instrument by its terms is declared to be a New York trust; and the trust assets, as well as the administration thereof, are subject to the jurisdiction of the State of New York. Decedent established his residence and domicile in the Commonwealth of Pennsylvania some years after he had created the trust, and at the time of his death the legal title to the trust assets within the New York jurisdiction was vested solely in the Chase National Bank of the City of New York as the trustee thereof. The foregoing is herein set forth as a matter of information only, there being no concession by the executor that the trust fund or any part of it is taxable under the inheritance tax laws of the Commonwealth of Pennsylvania. . . .

"Corpus value of trust as of date of death (for information purposes) $276,016.63."

Whereupon the Department of Revenue inserted as the valuation of the trust, the said sum of $276,016.63.

In the summary on said form the gross taxable estate was fixed at $535,382.85, of which the value of the real estate was determined to be $17,500, and the aggregate value of the personal property was determined at $517,882.85. If the value of the New York trust property was $276,016.63, the value of the personal estate which passed into the control of the executor of Charles Wilbur Hess would apparently be $241,866.20. On June 12, 1947, the inheritance tax appraiser filed a resident inheritance tax appraisement of the estate of Charles Wilbur Hess, in which the inter vivos estate was appraised for transfer inheritance tax at the sum of $276,016.63. On January 16, 1947, the succeeding trustee of the inter vivos trust, paid, under protest, to the Register of Wills of Lancaster County, as agent for the Commonwealth of Pennsylvania in the collection of transfer inheritance tax, the sum of $25,365 on account of an estimated net taxable trust estate of $267,000, less the usual five percent deduction for prompt payment.

Apparently the Chase National Bank, while making said payment under protest, wished to secure the benefit of the rebate in the possible event that the trust fund should be decided to be liable under the Pennsylvania tax laws.

An inspection of the inheritance tax appraisement discloses that the various items composing the trust estate were not individually or separately appraised, but appear in bulk at said sum of $276,016.63. Any defect, however, in the form of itemization of the said trust fund appears to be remedied by a stipulation filed November 20, 1947, in this court, whereby various items constituting the aggregate appraisement of $276,016.63 were listed. An inspection of this schedule discloses that said sum was composed entirely of shares of stock in various corporations, none of which were incorporated in the State of Pennsylvania.

In said trust agreement, it is specifically provided as follows:

"TO HAVE AND TO HOLD unto the said Trustee and its successors and assigns, in trust nevertheless, to hold the same during the lifetime of the Grantor, to collect the rents, issues, income, revenues and profits arising from the said Trust Estate, and after deducting therefrom the proper charges and disbursements of the said Trustee to pay the net income and profits therefrom to the said Grantor so long as he lives, and as soon after said Grantor's death as conveniently may be, without prejudice to said Trust Fund or Trust Estate, said Trust Fund or Trust Estate then remaining in the hands of said Trustee shall be distributed as follows:" [giving the names of the distributees, only one of whom is a resident of the Commonwealth of Pennsylvania.]

.   .   .   .   .   .   .   .   .   .

"And it is understood and agreed that the foregoing gifts shall be net to the beneficiaries named and that the Trustee shall pay from the principal of said Trust Fund or Trust Estate any inheritance tax, either Federal or State, levied or imposed against said gifts; but if the amount of the Trust Estate is not sufficient to pay in full the various amounts directed to be paid, then the gifts shall be reduced pro rata.

.   .   .   .   .   .   .   .   .

"After making all payments hereinbefore directed, and payment of all inheritance and estate taxes levied against said Trust Estate or the gifts made herein and all other claims of every kind against said Trust Estate, the balance of said Trust Estate then remaining shall be paid to the Estate of the Grantor.

"The Grantor reserves and shall have the right from time to time to direct the Trustee to sell the whole of the Trust Estate, or any part thereof, and to reinvest the proceeds in such other property as the Grantor shall

direct. The Grantor further reserves and shall have the right from time to time to withdraw and take over to himself the whole or any part of the property hereby transferred, provided, however, that simultaneously with such withdrawal, the Grantor shall transfer and deliver to the Trustee other property of a market value at least equal to that of the property so withdrawn.

"The Grantor further reserves and shall have the right from time to time to modify or add to the provisions of this indenture with respect to the management of the Trust Estate, and shall have the right to revoke in whole or in part the trust hereby created and to change the beneficiaries and the order in which they take hereunder.

.    .    .    .    .    .    .    .    .

"It is understood that this contract is made in the State of New York and governed by the laws thereof."

The amendments, modifications and supplements and additions to the trust are not involved in the determination of the present question before this court.

It appears that the settlement and distribution of the current assets of the trust fund must be had in the State of New York, but it was suggested at the argument that after the payment of the legal claims, debts and expenses of both the estate in the hands of the executor and the estate in the hands of the trustee under the inter vivos agreement, there may not be sufficient funds in either estate to pay in full the designated bequests or benefits of the trust fund; and it seems highly probable that there will be no residuary portion of the trust estate to revert to the estate proper.

The question, therefore, arises as to whether or not the trust estate is subject to the provisions of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, 72 PS §2301.

This act is entitled: "An Act Providing for the imposition and collection of certain taxes upon the

*transfer of property* passing from the decedent . . ." (Italics supplied) :

.   .   .   .   .   .   .   .   .

"*(c) When the Transfer is of property made by a resident,* or is of real property within this Commonwealth, or of goods, wares, and merchandise within this Commonwealth, or of shares of stock of corporations of this Commonwealth, or of national banking associations located in this Commonwealth, made by a non-resident, *by deed,* grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or *intended to take effect in possession or enjoyment at or after such death.*"

.   .   .   .   .   .   .   .   .

[The court's extensive quotation from Tack's Estate, 325 Pa. 545, 548, discussing the nature of estate and inheritance taxes, with citation of cases, is omitted.]

In Johnson's Estate, 333 Pa. 193, the Commonwealth of Pennsylvania maintained an inheritance tax, under the act as quoted, on the transfer of trust property held by the Wayne Title & Trust Company, a Pennsylvania corporation, engaged in business at Wayne, Delaware County, Pa., as trustee, in pursuance of a deed in trust executed by a person domiciled in the Republic of Cuba. This deed provided for the payment of income to settlor for life and upon his death for the transfer of the payment of principal and income to his daughters. The settlor died in Cuba nine years after the execution of the deed, whereupon the trustee filed an account as trustee, in the county of the residence of the trustee. The court held (p. 196) that the gifts to the settlor's daughters were "intended to take effect in possession or enjoyment at or after" his death; citing Hostetter's Estate, 267 Pa. 193; Oliver's Estate, 273 Pa. 400; Husband's Estate, 316 Pa. 361. The court, referring to the title of the act to be considered in getting at the legislative intention, showed that the

legislature used the words "goods, wares and merchandise" in a broad and not in a narrow sense, and the word, "goods", is nomen generalissimum, and when construed in the abstract would embrace all of the personal estate of testator, as bonds, notes, money, plate, furniture, etc. The court concluded (p. 198) that "the legislature intended by using the words 'goods, wares, and merchandise', to include all of a nonresident's Pennsylvania property except real estate and shares of stock of the character described. The fact the settlor was a resident of Cuba will not exempt the transfer from taxation here".

It is illuminating to read the case of Dorrance's Estate, 333 Pa. 162, and Griscom's Estate, 333 Pa. 186.

In Dorrance's Estate reference is made to the case of Safe Deposit & Trust Company of Baltimore v. Commonwealth of Virginia, 280 U. S. 83, in which the United States court held: "A statute of a state which undertakes to tax things wholly beyond her jurisdiction . . . conflicts with the Fourteenth Amendment"; and "Tangible personal property permanently located beyond the owner's domicile may not be taxed at the latter place" and "Intangible personal property may acquire a taxable situs where permanently located, employed and protected". The court accordingly held that the trust estate transferred and delivered by the resident of Virginia to a trust company of Maryland, and consisting of intangible property such as stocks and bonds, *without any person in Virginia having right of enjoyment or right to remove res* was not subject to taxation in the State of Virginia under Code Virginia, 1919, §2307, as amended, regardless of the maxim mobilia sequntur personam. (Italics supplied.) It must be remembered that the facts in the Virginia case involved the right of taxation of personal property. This case cites, on page 94, Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 471, 60 L. Ed. 830, involving an inheritance tax where the creator of a trust resided in

Wisconsin at his death, and an Illinois company with the legal title then held possession of the property in Chicago; but the creator had retained full power to revoke the trust and regain control.

The Supreme Court of Pennsylvania has recently reversed the Orphans' Court of Lancaster County in the matter of Todd Trust, 358 Pa. 530, where the settlor of an inter vivos trust directed payment of the income therefrom to his wife for life, and, in the event she predeceased him, to himself for life, and remainder to designated charities, but reserved the right of complete revocation, although the settlor predeceased his wife and the power of revocation had not been exercised. The lower court, relying on Dolan's Estate, 279 Pa. 582 (mere reservation of the right of revocation by a settlor does not make the property of a deed in trust taxable), struck off the appraisement of the trust estate as taxable. The Commonwealth appealed, contending that the assessment was properly made because (1) settlor retained the power of complete revocation, and (2) settlor reserved such interest in the property that upon his death there was a transfer within the meaning of the act. The Supreme Court quoted from Lines' Estate, 155 Pa. 378, 393, and Reish, Admr., v. Commonwealth, 106 Pa. 521, 526, saying:

" 'The policy of the law will not permit the owner of an estate, to defeat the plain provisions of the collateral inheritance law, by any device which secures to him, for life, the income, profits, and enjoyment thereof; it must be by such a conveyance as parts with the possession, the title, and the enjoyment in the grantor's lifetime.' "

The court also quoted from Glosser Trust, 355 Pa. 210, stating:

" 'The criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has ir-

revocably parted with all his interest, title, possession and enjoyment in his lifetime.' "

Accordingly the Supreme Court held that Todd, settlor, being a resident of Lancaster County, did not completely divest himself of all interest in the property. Instead he reserved himself a vested right to income for life, subject to being divested by his decease in the lifetime of his wife, whose life interest was vested in possession. His death was, therefore, contemplated to be an event which vested possession and enjoyment of the ultimate remainder interest.

It appears to this court that under the facts of the instant case, the fact that settlor retained control of the trust res during his lifetime, under the discussion of the law in the foregoing estates, made the State of Pennsylvania the preferred beneficiary of a certain portion of the trust estate before the other beneficiaries therein specifically nominated would receive any part of it. The provisions in a trust deed that any inheritance tax due was to be paid before the trust funds were distributed to the ultimate remaindermen, was to be to the relief and benefit of such remaindermen. In other words, testator made the provisions for distribution of net funds, which appear to be in excess of the funds available. The language of the deed creating the trust fund would not change the liability of the trust estate to account to the State of Pennsylvania for its share thereof.

It seems to this court insignificant in fixing liability under the Act of 1919 and its supplements, that the trust agreement made a provision that the trust estate was to be administered in the State of New York, and according to the laws of the State of New York. The provisions of the laws of Pennsylvania cannot be jeopardized by the whims of one who assumes a residence in and the protection of the provisions of the laws of this State; and the interpretation of the rules of law which have been recently applied to Todd's

Estate are applicable to all other residents of this Commonwealth. In Todd's Estate a remote contingency existed that the deed in trust would be revoked or changed, but the right nevertheless did exist, and the existence of this right of revocation, modification or change, constituted a reservation of an "interest" in the property., In the Hess trust estate a similar right of "interest" existed as long as Charles Wilbur Hess lived, and as long as he remained a resident of this Commonwealth, and this right only became extinguished upon his death, when the right of the designated beneficiaries became absolute and their prospective estates in the remainder became vested, subject to the distribution and payment of any and all lawful claims, including the share or interest therein of the Commonwealth of Pennsylvania. After Charles Wilbur Hess became a resident of the Commonwealth of Pennsylvania it may be assumed by this court that the inter vivos trust was modified and revoked in accordance with the fact, orally if not in writing, that settlor thereafter was subject to the laws of the Commonwealth and particularly to its inheritance tax laws.

It is apparent that this trust estate must be finally settled and administered by a New York court, so that this court has no extraterritorial jurisdiction over the New York court of the amount of the claims which will ultimately be presented against the trust estate situated in New York. But this court does have jurisdiction over the residents within its jurisdiction and their taxable estates, and while this court may be unable by process to enforce its jurisdiction on the trustee, it, nevertheless, has the inherent right to determine whether the property or estate of its residents are liable to the tax claim of the Commonwealth of Pennsylvania under the aforesaid Act of 1919, and its supplements, for the payment of a certain share thereof. The Chase National Bank, as trustee under the deed of trust, has submitted itself to a decision by

this court by its appeal from an appraisement of the value of the trust estate.

Under protest, the Chase National Bank, trustee, has made a substantial payment on account of said tax liability, but as this court does not have jurisdiction over the final accounting of the trustee, the exact amount of the liability of the estate must be left to an adjustment between the Department of Revenue of the Commonwealth of Pennsylvania and the Chase National Bank, in accordance with the decisions of the Pennsylvania courts herein referred to, and as hereby adjudicated. And the payments heretofore made on account of possible tax liability are to be considered a definite partial payment on account of the tax liability as hereby determined.

Charles Wilbur Hess, in the inter vivos trust hereinbefore referred to, made the following provision: "After making all payments hereinbefore directed, and payment of all inheritance and estate taxes levied against said Trust Estate or the gifts made herein and all other claims of every kind against said Trust Estate, the balance of said Trust Estate then remaining shall be paid to the Estate of the Grantor."

The same Charles Wilbur Hess made his will dated May 8, 1944, while a resident of Lancaster County. Of this will he appointed the Chase National Bank of the City of New York executor. This will, with the several codicils thereto attached, was duly probated in the office of the register of wills of this county, and letters granted to the executor therein named. In this will it appears that testator, after providing for the payment of his just debts and funeral expenses, made preferred bequests aggregating $115,000, and then if they are paid in full, made miscellaneous pecuniary bequests, and provided in paragraph:

"Fourteenth: All the rest, residue and remainder of my estate, of every kind, nature and description, not hereinabove disposed of, shall be disposed of as follows:

"(a) In case of any deficit in making full payment of the gifts effective upon my death under my Trust Indenture dated March 26, 1929 with the Chase National Bank of the City of New York, as Trustee, I direct that all or any part of the residue of my estate otherwise disposed of by this article Fourteenth of my Will be used to make good such deficit, and I give, devise and bequeath to such of the beneficiaries named in said Trust Indenture from my residuary estate a sum sufficient to make up any deficit in the gift to him."

And in item "Fifteenth" of said will it is provided: "I direct that any and all transfer succession, inheritance, legacy or estate taxes that may be levied on my estate or be at any time payable upon or in respect to any of the dispositions of this my will shall be paid out of my residuary estate."

It will thus be seen that the provisions of the inter vivos trust and its amendments, and the provisions of the will and codicils, are to a considerable extent dependent and interwoven one upon the other. The effect of this interlocking will eventually be considered not to be discretionary, nor are we in a position to adjudicate the same at this time. We are informed that under the provisions of the trust agreement, there seems to exist at the present time no likelihood of any funds becoming subject to the provisions of the will, nor can it be adjudged that any funds arising under the provisions of the will will be available to transfer to the beneficiaries of trust fund. It is clear, however, that the funds to be accounted for by the executor of the will of decedent in this court cannot be used to pay directly that which may be due under the transfer inheritance tax law of this Commonwealth on the inter vivos trust, nor can the funds of the trust estate be used directly to pay any debts or liabilities arising under testator's will, except as herein and hereinabove indicated.

Appellant in the present case admits that under the authority of the Supreme Court decision in Graves et al. v. Elliot, 307 U. S. 383 (1939) ; Central Hanover Bank and Trust Co. v. Kelly, 319 U. S. 94 (1943), and others, the Commonwealth could unquestionably tax the assets of the trust here in question, but it is admitted by appellants that under the Act of 1919, as amended, and judicial decisions thereunder, they find no precedents, decisions, or facts similar to those in the instant case. At the oral argument it was contended strenuously that because the act did not mention specifically the word "intangible", the property in the New York trust estate could not be taxable. With this argument we are not impressed in view of the citations herein set forth.

In addition to the cases which we have cited in the foregoing argument on behalf of the Commonwealth of Pennsylvania, they have called our attention to the following citations: Patterson's Estate, 127 N. Y. Supp. 284, at 286 (1910), affirmed in 130 N. Y. Supp. 970 and 98 N. E. 1109, holding that "The test of taxability is not the time of the complete divesting of the transferor's interest or ownership; it is the time of the complete succession by the transferee"; and in Pennsylvania only in the case of the creation of an irrevocable trust is the transfer of property considered effective at the date of the creation of the trust, and it is taxable not at the time of the death of trustor, but at the date of the creation of the trust. See Houston's Estate, 276 Pa. 330 (1923). In this estate a deed of trust was executed prior to the Act of 1919. In Arrison's Estate, 8 D. & C. 494, a lineal remainderman took in 1924 free of tax under an irrevocable deed executed in 1873.

On behalf of the Commonwealth it is further argued not only on behalf of the liability for the tax, but as to the collectibility of the same, that the Supreme Court of New Jersey, on a state of facts similar to those in

the instant case, in Kings County Trust Co. v. Martin, 121 N. J. L. 290, 2 A. (2d) 187, held on November 5, 1938, that taxation by the State in which donor was domiciled at the time of his death of a revocable trust held by a nonresident trustee which had been set up by the donor at the time that he was domiciled outside of the State, did not violate the fourteenth amendment to the Federal Constitution, since not the property, but the succession to it and benefit and enjoyment of property which took place by reason of the death of donor was taxable, citing Lines' Appeal, 155 Pa. 378. In the New Jersey case decedent died testate, a resident of New Jersey in 1934. In 1929, while a resident of New York State, decedent created an inter vivos trust in which he transferred cash and securities to a New York trustee and to himself, with the income to be paid to his mother-in-law, and upon her death to him for the benefit of his wife, with remainder to himself if living, and if deceased to a charity. None of the trust property was ever physically located in New Jersey. The court held that the fact that the trust was executed outside of the State to a nonresident trustee at the time when donor was domiciled outside of the State, did not prevent taxation of the transfer by New Jersey, where donor expressly reserved the power to alter and amend the trust, and that the transfer was taxable as a transfer intended to take effect at death. We note, however, that the liability to the New Jersey tax was found under the provisions of the Transfer Inheritance Statute (title 54, chapters 33 and 34, of the Revised Statutes) providing that taxes shall be imposed upon the transfer of property of the value of $500 or over "Where real or tangible personal property within this state of a resident of this state or intangible personal property wherever situate of a resident of this state or real or tangible personal property within this state of a nonresident, is transferred by deed . . . made in contemplation of the death of the grantor,

vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

While the Pennsylvania statute does not appear in verba ipsissima of the New Jersey statute, and does not contain the express words, "or intangible personal property wherever situate of a resident of this state", we have found that the legal effect of the Pennsylvania law as construed by its courts to be in practice the same.

The appeal is dismissed, and the appraisement as filed is hereby confirmed. Costs to be paid by the estate.